Brian BRUTTIG, Plaintiff-Appellant,

v.

David H. OLSEN, Rita Olsen, Tim Louis, and American Family Insurance Company, Defendants-Respondents,

POLARIS INDUSTRIES, INC., a foreign corporation, John Doe Insurance Company, Jane Doe Insurance Company, a foreign corporation, Jack Doe Dealer, and Employers Health Insurance Company, Defendants.

Court of Appeals

*No. 89–0725. Submitted on briefs November 13, 1989.—Decided December 20, 1989.*

(Also reported in 453 N.W.2d 153.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Lynn R. Laufenberg* of *Cannon & Dunphy, S.C.* of Milwaukee.

On behalf of the defendants-respondents, David H. Olsen, Rita Olsen and American Family Insurance Company, the cause was submitted on the brief of *James R. Sommers* of *Hunter & Summers* of Waukesha.

On behalf of the defendant-respondent, Tim Louis, the cause was submitted on the brief of *C. Donald Straub* of *Straub & Schuch* of Milwaukee.

Before Brown, P.J., Scott and Nettesheim, JJ.

BROWN, P.J.   In this personal injury case, Brian Bruttig, an adolescent minor, was injured while playing on a snowmobile with two other boys, Tim Louis and Douglas Olsen. Brian sued Tim and also sued Douglas' parents, David and Rita Olsen. After trial to a jury, Brian was found more negligent than any other individual. On appeal, he argues that the trial court wrongly refused to impute to each Olsen parent the negligence of the other, and wrongly denied his motion after verdict to charge each minor participant with an equal percentage of causal negligence. We reject his contentions and affirm.

On the day of Brian's injury, he, Tim and Douglas were playing "snowmobile tag" with the Olsens' snowmobile. The rules of the game require a driver and a passenger to drive the snowmobile through the Olsen yard and neighboring property while a third person tries to knock the passenger off of the vehicle. On this occasion, Tim was driving and Brian was the passenger, when Brian's leg became entangled in the snowmobile track.

Testimony at trial suggested different versions of how the accident occurred. Under one version, Douglas pushed Brian, who then slid off the machine; under another, Brian let go of the safety strap and was dislodged from the machine while Douglas was some feet away; under a third, Brian was injured after he slid off the seat and tried to haul himself back up by the safety strap.

At the time of the accident, David Olsen was separated from his wife Rita, although their divorce was not final. David visited on a weekly basis. He testified that he felt he had a responsibility and an opportunity to supervise Douglas. Rita, however, had physical custody of the boy.

At the close of testimony, the trial court proposed to submit a special verdict to the jury in which the negligence of Tim, Douglas, Brian, David and Rita would be separately determined. Brian objected, arguing that David and Rita's responsibility should be determined jointly. His argument was rejected. The court then instructed the jury on, among other things, the parental duty to control children and the duty of persons not to allow improper parties to use things or instrumentalities. The jury found all parties causally negligent and apportioned that negligence as follows:

| | | |
|---|---|---|
| a. | David Olsen: | 19% |
| b. | Rita Olsen: | 26% |
| c. | Tim Louis: | 4% |
| d. | Douglas Olsen: | 9% |
| e. | Brian Bruttig: | 42% |

By motions after verdict, Brian renewed his request that the trial court impute the negligence of each Olsen parent to the other. He also requested that the negligence of the boys be combined and divided by three. The motions were denied. Further facts are set forth in the opinion as required.

In support of his argument that the negligence of David and Rita should be combined, Brian relies on *Reber v. Hanson,* 260 Wis. 632, 51 N.W.2d 505 (1952). In

*Reber,* the court recognized a duty of both mother and father to protect their children. The duty is one of reasonable care and arises out of the laws of nature. *Id.* at 635–36, 51 N.W.2d at 507.

The duty to protect inures to both parents and neither is excused from observing it whenever it is within their power to do so. *Id.* at 636, 51 N.W.2d at 507. Our supreme court recognizes, however, that, under some facts, performance of the duty to protect lies within the power of one parent alone and in such case negligence on the part of one parent is not imputed to the other. *Id.*

In *Reber,* the court found that under the facts of that case, performance of the duty to protect lay within the power of both parents equally. The Reber child was fatally injured while playing in his parents' driveway. The *Reber* court held that the circumstances of that case were such that there was a present danger known to both parents. *Id.* at 637, 51 N.W.2d at 508. Its analysis recognized that either parent could have taken precautions that would have averted the danger. *Id.* at 637–38, 51 N.W.2d at 508. It therefore concluded that the duty to protect was joint, the opportunity to protect was equal, and, as a matter of law, neither the obligation nor its breach could be divided between the parents. The parents were negligent as a unit. *Id.* at 638, 51 N.W.2d at 508.

The *Reber* case is a lone exception to the general rule that the negligence of the parties is to be compared individually for purposes of determining whether liability exists. *Reiter v. Dyken,* 95 Wis. 2d 461, 465–66, 290 N.W.2d 510, 513 (1980). The *Reber* case was expressly decided on its facts. *Reber,* 260 Wis. at 636–638, 51

N.W.2d at 507–08. Of vital importance was the fact that both Reber parents had an equal opportunity to know of the danger to their child and protect him from it; the *Reber* court distinguished an earlier case in which such equal opportunity, as a matter of fact, did not exist. *Id.* at 636, 51 N.W.2d at 507 (citing *Hansberry v. Dunn,* 230 Wis. 626, 284 N.W. 556 (1939)). We hold that a reasonable jury could find the facts here to present different opportunities to David and to Rita, and *Reber* therefore does not apply.

Two duties are implicated here: the duty of a parent to control the conduct of a child and the duty not to permit a third person to use a thing or to engage in an activity which is under the control of the actor. These duties are set forth in *Bankert v. Threshermen's Mut. Ins. Co.,* 110 Wis. 2d 469, 476–77, 329 N.W.2d 150, 153, (1983):

### Permitting Improper Persons to Use Things or Engage in Activities

It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

. . ..

### Duty of Parent to Control Conduct of Child

A parent is under a duty to exercise reasonable care so to control his minor child as to prevent if from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent

(a) knows or has reason to know that he has the ability to control his child, and

276

(b) knows or should know of the necessity and opportunity for exercising such control.

Thus, whether David and Rita are guilty of these torts turns on each one's knowledge of or opportunity to know about the conduct of the child.

David was not present at the home, or even living there, when the accident occurred, and in fact had been living away from home for six months previously. However, the game of snowmobile tag was of recent origin, and young Olsen deliberately hid its invention from his parents. Thus, unlike the *Reber* case, the fact finder could reasonably infer that David had no knowledge of the danger and was not able—or was at least less able than Rita—to discover it and exercise authority to stop it. Further, David had instructed his son to use the snowmobile only under certain conditions, specifically, neighbor boys could use it only when David was present and the boys were to use it responsibly. A party need not anticipate disobedience unless given a reason to do so. *Seibert v. Morris,* 252 Wis. 460, 464, 32 N.W.2d 239, 241 (1948). Again, since David was not living at home, the jury could reasonably infer that David had less of an opportunity to discover or suspect dangerous use of the snowmobile than did his wife.

Rita, on the other hand, lived with the boys. Although she was away from home at the time of the accident, her daily proximity to the boys and the snowmobile could be found to give her greater opportunity than had David to observe any uses or abuses of the machine and to exercise discipline accordingly. The game was evidently invented and played while she alone had physical custody of her son. A jury could reasonably infer for her an opportunity greater than David's to con-

trol and a greater opportunity to know that the snowmobile was being used in an unreasonable way. Thus, even if the duties of the Olsen parents were considered equal, the opportunity to exercise them was not necessarily equal and the matter was properly before the jury. *See Mariuzza v. Kenower,* 68 Wis. 2d 321, 326 n.4, 228 N.W.2d 702, 705 (1975).

Additionally, we think public policy considerations underlying the *Reber* decision are not present here. Specifically, in *Reber,* husband and wife sued for damages. Realistically, where the marriage is intact, recovery to one spouse generally benefits both. *See Stull v. Ragsdale,* 620 S.W.2d 264, 267 (Ark. 1981). Where both spouses have an equal opportunity to prevent the harm complained of and both are negligent, combining their negligence in exercising the duties of care and control of children prevents negligent parties from benefiting by their own wrongdoing and does not penalize any innocent party.[1] Imputing negligence of one spouse to the other, whether on a theory of agency, *see Hansberry,* 230 Wis. at 637, 284 N.W. at 560–61, family relation, *see*

[1]Compare *Hansberry v. Dunn,* 230 Wis. 626, 284 N.W. 556 (1939), where wife was contributorily negligent in a car accident that injured one child and killed another, but husband, who was not present, could recover for his losses without reduction for his spouse's negligence. The court held such recovery proper because the wife was not acting as her husband's agent. *Id.* at 637, 284 N.W. at 561. Other jurisdictions, facing similar situations, have held it unfair to penalize a completely non-negligent party for the negligence of his or her spouse. *See* Annotation, *Negligence of One Parent Contributing to Injury or Death of Child as Barring or Reducing Damages Recoverable by Other Parent for Losses Suffered by Other Parent as Result of Injury or Death of Child,* 26 A.L.R. 4th 396, 401 (1983), and cases cited therein.

*Stull,* 620 S.W.2d at 267, or the unity of husband and wife, serves to diminish or bar recovery to the community as a whole and where the entire community has been negligent that result may be justified. In the instant case, however, the Olsens do not seek recovery and do not stand to benefit monetarily from their tortious conduct. There is, therefore, no public policy reason to deviate from the general rule of comparing the negligence of the complainant to the negligence of each defendant individually.

We turn, then, to Brian's second claim of error. He argues that the jury's apportionment of negligence was wrong and that as a matter of law the negligence of the three boys was equal. The argument is really twofold: first, Brian argues that the negligence of each boy was of precisely the same kind and character and therefore equal as a matter of law; second, Brian argues that the three boys acted in concert to commit a tortious act and therefore each boy should be charged with the causal negligence of the other and their percentages of negligence found equal. We disagree.

As to the first argument, apportionment is generally for the jury, although the trial court may on rare occasion find negligence to be equal where the negligence of each actor is of exactly the same nature and kind. *See Langworthy v. Reisinger,* 249 Wis. 24, 28–29, 23 N.W.2d 482, 484–85 (1946). Brian's position on motions after verdict and on appeal that each boy's negligence was identical is inconsistent with that taken at trial. At the instructions conference, Brian took the position that the jury could find Douglas' negligence to consist of letting Douglas' friends use the Olsen snowmobile. Such negligence cannot be of precisely the same kind and nature as the negligence of those friends. Brian now tries to argue

otherwise, but principles of judicial estoppel foreclose him from doing so. *See State v. Washington,* 142 Wis. 2d 630, 635, 419 N.W.2d 275, 277 (Ct. App. 1987).

In any event, it cannot be said that the negligence of each boy is of the same kind and character as a matter of law. For example, any negligence of Tim in operating the snowmobile improperly is necessarily of a different kind than is any negligence of Brian as passenger in failing to hold on.

Relying on *Ogle v. Avina,* 33 Wis. 2d 125, 146 N.W.2d 422 (1966), Brian also argues that the boys' negligence is equal because the tag game created a situation of mutual stimulation where the negligence of each participant is entirely interrelated with that of the others and therefore each should be charged with the causal negligence of the other.

Although couched in terms of apportionment, Brian's argument is in fact a separate theory of liability, that of "concerted action." *See Collins v. Eli Lilly Co.,* 116 Wis. 2d 166, 184–85, 342 N.W.2d 37, 46, *cert. denied sub nom. E.R. Squibb & Sons, Inc. v. Collins,* 469 U.S. 826 (1984). This theory of liability rests upon the principle that "those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts done for their benefit, are equally liable with him." *Id.* at 184, 342 N.W.2d at 46 (citing W. Prosser, *Handbook of The Law of Torts,* sec. 46 at 292 (4th ed. 1971)). As Prosser notes, under this theory, the jury would not be permitted to apportion damages. W. Prosser, *Handbook of The Law of Torts,* sec. 46 at 291 (4th ed. 1971).

Wisconsin has never explicitly adopted the concerted action theory except in a variant form to impose joint and several liability on all defendants participating

in a drag race. *Collins,* 116 Wis. 2d at 185, 342 N.W.2d at 46. We question the wisdom of applying the theory so as to impose equal liability on a plaintiff "acting in concert" with defendants, as the necessary effect of such application is to guarantee plaintiff recovery so long as he was negligent. We do not decide the merits of the issue, however, because a "concerted action" theory of liability was never raised in the trial court, either before or after verdict.

A litigant seeking to prevent a jury from apportioning liability among parties must raise the issue before it is submitted to the jury on a theory that the parties are to be compared individually. *Reiter,* 95 Wis. 2d at 468-69, 290 N.W.2d at 514. Brian accepted the proposed special verdict that asked the jury to assess each boy's negligence individually. His game plan was to gamble on being found less negligent than at least one party, or not negligent at all. Now, after the verdict has been returned, he argues that the negligence of the three boys is indivisible. A party cannot take his chance with the jury and object only if he loses. *Savina v. Wisconsin Gas Co.,* 36 Wis. 2d 694, 701, 154 N.W.2d 237, 240 (1967).

*By the Court.*—Judgment affirmed.