Michelle RICHARDS, Plaintiff-Respondent,†

v.

BADGER MUTUAL INSURANCE COMPANY,
Defendant-Third-Party Plaintiff-Appellant,

David SCHRIMPF, Defendant-Third-Party Plaintiff,

v.

Tomakia PRATCHET, Third-Party Defendant.

Court of Appeals

*No. 2005AP2796. Submitted on briefs August 31, 2006.
—Decided November 14, 2006.*

2006 WI App 255

(Also reported in 727 N.W.2d 69.)

† Petition to review filed.

On behalf of the defendant-third-party-plaintiff-appellant, the cause was submitted on the briefs of *Eric S. Darling* of *Schmidt, Darling & Erwin,* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James J. Murphy* and *Keith R. Stachowiak* of *Murphy & Prachthauser* of Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. CURLEY, J. Badger Mutual Insurance Company (Badger Mutual) appeals from the portion of the judgment entered in favor of Michelle Richards holding Badger Mutual, as David Schrimpf's liability insurer, jointly and severally liable for the negligence of third-party defendant Tomakia Pratchet, under WIS. STAT. § 895.045(2) (2003–04).[1] This appeal arises out of a wrongful death lawsuit brought by Richards following the death of her husband, Christopher Richards, who died in a car accident when his car was hit by a car driven by nineteen-year-old Robert Zimmerlee, who was intoxicated and had obtained alcohol from Pratchet. Badger Mutual contends that the trial court erred in determining that "procuring" alcohol for an underage person, who later causes an injury while intoxicated, can constitute a "concerted action" that makes the provider jointly and severally liable for the injury under § 895.045(2).

¶ 2. We hold that to be liable for concerted action under WIS. STAT. § 895.045(2) the persons must have acted in accordance with a common scheme or plan to accomplish the result that caused the injury. As a result,

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

we conclude that procuring alcohol for an underage drinker, who later causes injury when driving while intoxicated, cannot constitute a "concerted action" within the meaning of § 895.045(2) to make the person who procured the alcohol jointly and severally liable for the injury, when the procurer did not agree to act in accordance with a common scheme or plan to drive while intoxicated. Therefore, because here the conduct that caused the injury was Zimmerlee driving while intoxicated, and because Pratchet did not engage in a "common scheme or plan" to drive while intoxicated, Zimmerlee, Schrimpf and Pratchet are not jointly and severally liable and Badger Mutual is not responsible for Pratchet's share. Accordingly, we reverse the portion of the judgment that found Badger Mutual jointly and severally liable for Pratchet's negligence.

## I. BACKGROUND.

¶ 3. According to the stipulated facts,[2] early in the evening on January 25, 2003, Zimmerlee and Schrimpf, both nineteen years old at the time, decided that they wanted to consume alcohol that evening. Because they were both under the legal drinking age of twenty-one, they were unable to purchase alcohol themselves, so Schrimpf asked Pratchet, a co-worker of his at a restaurant and thirty-one years old at the time, to purchase beer for him and Zimmerlee. Pratchet agreed. After Pratchet finished her shift at the restaurant, Zimmerlee drove Pratchet to a grocery store where she purchased an eighteen-pack of beer. Zimmerlee supplied the money. During the entire trip to the grocery

---

[2] The parties have stipulated to all facts and resolved all factual and legal issues, except the one that is the subject of this appeal.

store, Schrimpf was a passenger in Zimmerlee's car. The beer remained in Zimmerlee's car until later that evening when Schrimpf and Zimmerlee went to a party sometime between midnight and 1:00 a.m. They were not joined by Pratchet. Zimmerlee admitted drinking "maybe half" of the beer. At approximately 7:30 a.m., Zimmerlee and Schrimpf left the party and Zimmerlee drove away, with Schrimpf as a passenger.

¶ 4. Minutes after leaving the party, Zimmerlee ran a stop sign while traveling at a speed in excess of the posted speed limit. Zimmerlee's vehicle collided with an automobile driven by Christopher Richards. Richards was killed in the accident. The parties have stipulated that there was no negligence on the part of Richards. It is also undisputed that Zimmerlee was intoxicated at the time of the accident, and that the beer was a substantial factor in causing the accident and Richards's death. *See Sorensen v. Jarvis*, 119 Wis. 2d 627, 646, 350 N.W.2d 108 (1984) (provider of alcohol is liable for his/her share of causal negligence in providing alcohol if alcohol was "a substantial factor in causing the accident or injuries as determined under the rules of comparative negligence"). The parties have further stipulated that both Schrimpf and Pratchet "procured" alcohol for Zimmerlee, within the meaning of WIS. STAT. § 125.035(4)(a),[3] and were thus negligent under WIS. STAT. § 125.07(1)(a)1.[4] Sections 125.035(4)(a) and 125.07(1)(a)1. specifically per-

---

[3] WISCONSIN STAT. § 125.035(4)(a) provides, as relevant: " 'provider' means a person, including a licensee or permittee, who procures alcohol beverages for or sells, dispenses or gives away alcohol beverages to an underage person in violation of s. 125.07(1)(a)."

[4] WISCONSIN STAT. § 125.07 provides, as relevant:

**Underage and intoxicated persons; presence on licensed premises; possession; penalties. (1)** ALCOHOL BEVERAGES; RESTRIC-

mit recovery from an individual who "procures" alcohol for an underage drinker. According to the stipulated facts, Zimmerlee's share of the causal negligence was 72%, Schrimpf's share was 14%, and Pratchet's share was 14%. The parties also stipulated that Michelle Richards's (Christopher Richards's widow) total damages were $1,785,714.29.

¶ 5. Michelle Richards initially pursued a claim against Zimmerlee but settled, resulting in a *Pierringer*[5] release, and it was subsequently agreed that the release satisfied Zimmerlee's 72% of Richards's damages, or $1,285,714.29. Zimmerlee is not a party to this appeal.

¶ 6. Richards also pursued the instant claim against Schrimpf and his liability insurer, Badger Mutual. Schrimpf's responsibility for his own 14% of the causal negligence, or $250,000, is not in dispute and has already been paid by Badger Mutual. Richards never brought a claim against Pratchet, but nonetheless sought to recover the 14% attributed to Pratchet. Because Zimmerlee was released via a *Pierringer* release, Zimmerlee could not be held responsible for Pratchet's share, so Richards instead sought to hold Schrimpf responsible for Pratchet's share; that is, Richards sought to recover from Schrimpf as Schrimpf's own 14%, well as Pratchet's 14%, or $500,000 instead of $250,000. To that end, among Richards's claims against Schrimpf was an allegation that the activities of Zimmerlee, Schrimpf and Pratchet at the time the beer was purchased constituted a "concerted action" within

tions relating to underage persons. (a) *Restrictions*. 1. No person may procure for, sell, dispense or give away any alcohol beverages to any underage person not accompanied by his or her parent, guardian or spouse who has attained the legal drinking age.

[5] *Pierringer v. Hoger*, 21 Wis. 2d 182, 124 N.W.2d 106 (1963).

the meaning of WIS. STAT. § 895.045(2),[6] and that the three can therefore be held jointly and severally liable for the injury. The parties disagreed on whether Zimmerlee, Schrimpf and Pratchet were subject to § 895.045(2). Richards asserted there was a factual issue of whether Zimmerlee, Schrimpf and Pratchet acted "in accordance with a common scheme or plan" as required to constitute a "concerted action" under § 895.045(2); Schrimpf and Badger Mutual disagreed.

¶ 7. The case was to be tried to a jury. On April 18, 2005, before the start of the trial, the trial court ruled that the facts of the case created an issue of fact about whether Zimmerlee, Schrimpf and Pratchet acted "in accordance with a common scheme or plan" and agreed to instruct the jury with respect to WIS. STAT. § 895.045(2).

¶ 8. The jury trial began on August 22, 2005, but was terminated because the parties agreed to commence settlement negotiations. The parties ultimately settled all factual and legal issues except one, by stipulating to a detailed set of facts and conclusions, the details of which are referenced above. The parties specifically agreed that the purpose of the stipulation was to settle the case without a trial, but preserve Badger Mutual's right to appeal the trial court's ruling on the legal issue of whether WIS. STAT. § 895.045(2) was properly applied. The parties also agreed to waive their right to a jury trial and to allow the trial judge to function as the trier of fact and to resolve, based on the stipulated facts, the only remaining factual question of

[6] WISCONSIN STAT. § 895.045(2) provides, as relevant: "if 2 or more parties act in accordance with a common scheme or plan, those parties are jointly and severally liable for all damages resulting from that action, except as provided in s. 895.043(5)."

whether Schrimpf, Zimmerlee and Pratchet "acted in accordance with a common scheme or plan" under § 895.045(2). The trial court concluded that Schrimpf, Zimmerlee and Pratchet "acted in accordance with a common scheme or plan in procuring beer on the date in question," and that "[a]s such, the three of them are jointly and severally liable under sec. 895.045(2)." On October 10, 2005, the trial court issued a stipulation and order setting forth the stipulated facts and the court's decision. Badger Mutual now appeals.

## II. ANALYSIS.

¶ 9. Badger Mutual contends that the trial court erred in concluding that "procuring" alcohol for an underage drinker, who later causes injury when driving while intoxicated, creates an issue of fact as to whether the procurer and the driver acted in accordance with a "common scheme or plan" under WIS. STAT. § 895.045(2).

¶ 10. We begin by examining the relevant statute. Prior to 1995, joint and several liability was a common-law rule that permitted an injured plaintiff to recover his or her damages from any one of two or more persons whose joint negligent acts caused the plaintiff's injury. *See Bielski v. Schulze*, 16 Wis. 2d 1, 114 N.W.2d 105 (1962) (adopting joint and several liability in Wisconsin); *see, e.g, Wisconsin Natural Gas Co. v. Ford, Bacon & Davis Constr. Corp.*, 96 Wis. 2d 314, 330–31, 291 N.W.2d 825 (1980). In 1995, the legislature modified the doctrine of joint and several liability by limiting joint and several liability to persons 51% or more causally negligent. 1995 Wis. Act 17, § 1; *see Matthies v. Positive Safety Mfg. Co.*, 2001 WI 82, ¶¶ 8–14, 244 Wis. 2d 720, 628 N.W.2d 842.

Today, this general rule is set forth in WIS. STAT. § 895.045(1), entitled "Comparative Negligence."[7]

¶ 11. However, in a limited circumstance set forth in WIS. STAT. § 895.045(2) and entitled "Concerted Action," the pre-1995 rule still applies. Section 895.045(2), the statute at issue in this appeal, provides: "Notwithstanding sub. (1), if 2 or more parties act in accordance with a common scheme or plan, those parties are jointly and severally liable for all damages resulting from that action, except as provided in s. 895.043(5)."

¶ 12. At the trial court, Richards, as noted, maintained that the act of Schrimpf and Pratchet "procuring" alcohol for Zimmerlee, who later caused injury when he drove while intoxicated, presented an issue of fact as to whether Zimmerlee, Schrimpf and Pratchet were liable for "concerted action"; that is, acted "in accordance with a common scheme or plan" under WIS. STAT. § 895.045(2) for the injury. The trial court, as mentioned, agreed. Richards further maintained that the facts showed that the three did act in "accordance

---

[7] WISCONSIN STAT. § 895.045(1) provides, as relevant:

(1) COMPARATIVE NEGLIGENCE. Contributory negligence does not bar recovery in an action by any person or the person's legal representative to recover damages for negligence resulting in death or in injury to person or property, if that negligence was not greater than the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributed to the person recovering. The negligence of the plaintiff shall be measured separately against the negligence of each person found to be causally negligent. The liability of each person found to be causally negligent whose percentage of causal negligence is less than 51% is limited to the percentage of the total causal negligence attributed to that person. A person found to be causally negligent whose percentage of causal negligence is 51% or more shall be jointly and severally liable for the damages allowed.

with a common scheme or plan." The trial court again agreed, finding that the facts supported a finding that the three acted "in accordance with a common scheme or plan," making them jointly and severally liable for Richards's damages.

¶ 13. The issue before us is therefore whether the trial court properly concluded that "procuring" alcohol for a minor under Wis. Stat. §§ 125.035(4)(a) and 125.07(1)(a)1., when the minor later causes an injury when driving while intoxicated, can be applied to Wis. Stat. § 895.045(2), to create an issue of fact as to whether the providers of the alcohol and the minor who later caused the injury engaged in a "concerted action"; that is, acted "in accordance with a common plan or scheme." We are, in other words, asked to explain what is required for persons to have a "common scheme or plan" that amounts to "concerted action" liability under § 895.045(2). There is no case law interpreting § 895.045(2), making this an issue of first impression.[8] The application of a statute to an undisputed set of facts is a question of law, that this court reviews *de novo. Nelson v. McLaughlin,* 211 Wis. 2d 487, 495, 565 N.W.2d 123 (1997).[9]

---

[8] We note that an independent search of the legislative history of Wis. Stat. § 895.045(2) has revealed very little information about the development of the statute. Indeed, the only discussion appears to have centered around a suggestion to use the word "persons" as opposed to "parties" to refer to the relevant individuals in both § 895.045(1) and (2). This discussion is of no relevance for purposes of our analysis however.

[9] The parties disagree on the proper standard of review. Badger Mutual contends that we should analyze this case *de novo,* asserting that the question involves only the interpretation of the statutory language and the application of the statute

¶ 14. Badger Mutual contends that the trial court erred in concluding that this case presents a factual issue of whether Wis. Stat. § 895.045(2) applies, and maintains that, consistent with the pre-1995 common-law rule on concerted action liability, concerted action liability applies only in rare circumstances like drag racing where all parties are guilty of simultaneous and equally culpable behavior, even if only one of them actually caused the harm. Badger Mutual emphasizes that, unlike this case where negligence percentages were assigned to each defendant, in situations that involve concerted action liability, the comparative fault of the various defendants becomes a moot point because all parties share equally in the responsibility. According to Badger Mutual, § 895.045(2) "simply recognizes a limited form of liability that existed even prior to the enactment of the new joint and several liability rules" and "does not create a new cause of action, establish a new species of liability or otherwise expand concerted action liability under Wisconsin law."

¶ 15. We begin by examining the pre-1995 Wisconsin case law, on which Badger Mutual relies. The first case in Wisconsin to discuss and name "concerted action" liability was *Collins v. Eli Lilly Co.*, 116 Wis. 2d 166, 342 N.W.2d 37, *cert. denied*, 469 U.S. 826 (1984).

---

to the undisputed facts. Richards maintains that the issue is a question of fact to be reviewed under the clearly erroneous standard. We disagree with Richards. Although the parties agreed to allow the trial court to function as the fact finder and the trial court ultimately concluded that a "common scheme or plan" did exist between Zimmerlee, Schrimpf and Pratchet, the issue before us is the propriety of the trial court's initial legal conclusion that an issue of fact existed, that is, whether Wis. Stat. § 895.045(2) applies to this case. As such, this issue is a legal question that we review independently.

The case involved an action against manufacturers of the drug diethylstilbestrol (DES) in which the plaintiff, whose mother had taken the drug during pregnancy, developed cancer, but was unable to identify which manufacturer had supplied the drug to her mother, so she sued seventeen drug manufacturers that could have been the supplier. *Id.* at 174–75. The supreme court considered various theories of liability, including "concerted action" liability and market-share liability, *id.* at 175–76, 182–90, ultimately adopting a variation of market-share liability and declining to apply the "concerted action" liability doctrine on grounds that the facts here did not support it, *id.* at 182–90, 198.

¶ 16. With respect to "concerted action" liability, the court noted:

> The concerted action theory of liability rests upon the principle that "those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts done for their benefit, are equally liable with him. Express agreement is not necessary, and all that is required is that there be a tacit understanding."

*Id.* at 184 (quoting W. Prosser, *Handbook on the Law of Torts,* sec. 46 at 292 (4th ed. 1971)). The court noted that in drag racing cases, Wisconsin courts have applied a variant of the theory, imposing joint and several liability on all participants even if only one of them actually caused the harm, stressing that "the plaintiff, under the concerted action theory of liability, must also be able to prove that there was an agreement or, at least, a tacit understanding among the defendants." *Id.* at 184–85. The court disagreed with the plaintiffs that failing to adequately test the DES or warn patients of

its potential damages satisfied the agreement requirement, and concluded that "[a]lthough there was a substantial amount of a parallel action by the defendants in producing and marketing DES for use in pregnancy . . . this d[id] not rise to the level of 'acting in concert.' " *Id.*

¶ 17. The second case of relevance, the drag racing case referenced by *Collins*, is *Ogle v. Avina*, 33 Wis. 2d 125, 146 N.W.2d 422 (1966). In *Ogle*, the court held two drivers who had engaged in drag racing equally liable even though only one driver actually caused a fatal collision. *Id.* at 135. Although the case does not use the term "concerted action," as recognized by *Collins*, it clearly discusses the same concept as *Collins*, stating:

> We think when there is an understanding to reach a common destination and in doing so illegal speed is used and the cars are driven so closely together as to be practically in tandem, or to constitute a unit, that we have a situation of mutual stimulation where the negligence of each participant is so related to the negligence of the other participants that the participants should each be chargeable with the causal negligence of the other as to speed and their percentage of causal negligence should be equal.

*Ogle*, 33 Wis. 2d at 135. *Ogle* is the first case in Wisconsin to apply the concept of concerted action liability, and to date, the only case to actually find concerted action liability.

¶ 18. The most recent case to consider concerted action liability in Wisconsin is *Bruttig v. Olsen*, 154 Wis. 2d 270, 453 N.W.2d 153 (Ct. App. 1989). In *Bruttig*, a minor was injured while he and two other minors were involved in a game of "snowmobile tag." *Id.* at 273. On appeal, the injured minor sought to, among other

things, utilize the concerted action theory to hold his two young playmates equally liable after the jury appointed a greater percentage of causal negligence to him (42) than to the other two participants (4 and 9). *Id.* at 274, 279–80. The injured boy asserted that the game created a situation where the negligence of each was interrelated and, as such, the three boys acted in concert to commit a tortious act, and therefore each boy should be charged with the causal negligence of the others. *Id.* at 279–80.

¶ 19. Although the court ultimately declined to decide the merits of the issue on grounds that a "concerted action" theory had not been timely argued at the trial court, *id.* at 281, the court nonetheless offered a discussion about the theory. Citing *Collins* and *Ogle*, the court noted that "Wisconsin has never explicitly adopted the concerted action theory except in a variant form to impose joint and several liability on all defendants participating in a drag race." *Bruttig*, 154 Wis. 2d at 280–81. The court emphasized, however, that contrary to what the jury had already done at the trial court level, under concerted action liability "the jury would not be permitted to apportion damages." *Id.* at 280 (citation omitted). The court added: "We question the wisdom of applying the theory so as to impose equal liability on a plaintiff 'acting in concert' with defendants, as the necessary effect of such application is to guarantee plaintiff recovery so long as he was negligent." *Id.* at 281.

¶ 20. As noted, *Collins, Ogle* and *Bruttig* were all decided prior to the 1995 revision of the doctrine of joint and several liability. On that basis, Richards maintains that the use of the term "concerted action" in Wis. STAT. § 895.045(2) does not refer to a common law theory of

liability that was merely recognized by § 895.045(2), as argued by Badger Mutual. Referencing *Collins, Ogle* and *Bruttig*, Richards emphasizes that "[t]he 'concerted action' type of claim still has not been explicitly adopted in Wisconsin[,]" and therefore insists that it would be absurd and "unreasonable to believe that the legislature intended to limit application of § 895.045(2) to a theory of liability not yet officially recognized in Wisconsin." Richards also submits that nothing in the statute limits its application to cases like drag racing where equal liability is established, and thus essentially argues that § 895.045(2) does create an entirely new cause of action. We disagree.

¶ 21. We are satisfied that WIS. STAT. § 895.045(2) is a codification of the common-law rule on concerted action liability discussed, but not explicitly adopted, in *Collins, Ogle* and *Bruttig*, and not a new cause of action. A clear indication that "concerted action" in § 895.045(2) is indeed the same concept as "concerted action" as discussed in *Collins, Ogle* and *Bruttig* can be found in the recently released jury instruction for § 895.045(2), WIS JI—CIVIL 1740. This instruction was approved by the Wisconsin Civil Jury Instruction Committee at the end of 2005, and was thus not available to the trial court in April 2005 at the time the court made its ruling to allow the § 895.045(2) question to be presented, or when the parties settled all other issues in October 2005.[10] The instruction reads:

---

[10] At the time this case was pending before the trial court, a jury instruction for WIS. STAT. § 895.045(2) had not yet been approved. The Wisconsin Civil Jury Instruction Committee had released only a short comment which included the following language: "The Committee believes that the question of whether parties have acted in accordance with a common scheme or plan is a question of fact for the factfinder. It is not

Question ___ asks whether (defendant) engaged in concerted action?

Parties engage in concerted action when they pursue a common scheme or plan to accomplish a result that injures the plaintiff. Parties engaged in concerted action do not have to intend that plaintiff be injured.

Parties engage in concerted action if they either:

1. actively take part in a common scheme or plan that injures the plaintiff; or

2. further the common scheme or plan by cooperation or request; or

3. give assistance or encouragement to any of the other participants; or

4. ratify and adopt the actions of other participants for their benefit.

Action in concert requires that there be *agreement about the common scheme or plan to accomplish a result that injures the plaintiff.* The agreement need not be expressed in words but may be implied and understood to exist from the conduct itself.

evident from the language of the new law that an improper motive of unlawful act is necessary for a common scheme or plan to exist." The parties referenced this comment at the April 18, 2004 hearing, at which the trial court ruled that a question of fact did exist with respect to § 895.045(2), but appeared to acknowledge that it was of little assistance in interpreting the statute.

WISCONSIN JI–CIVIL 1740 was approved by the Committee in 2005 and according to our independent inquiry, released to the public some time in early 2006. Neither party argues from or mentions WIS JI–CIVIL 1740 in their appellate briefs, and we therefore assume that they did not have access to it until the briefing in this case was completed in the spring of 2006.

Wɪs JI—Cɪvɪʟ 1740 (emphasis added). Even more informative is the comment that accompanies Wɪs JI—Cɪvɪʟ 1740. The comment to the instruction first notes that no reported cases have defined the meaning of "common scheme or plan," and then relies heavily on the discussion on concerted action in Collins and quotes from the portion of *Collins* that mentions *Ogle* as an example of concerted action. Indeed, the four elements listed in Wɪs JI—Cɪvɪʟ 1740 appear to come directly from *Collins*'s discussion about concerted action. *Id.,* 116 Wis. 2d 185 (" 'those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts done for their benefit, are equally liable with him' ") (citation omitted).

¶ 22. The comment to Wɪs JI—Cɪvɪʟ 1740 next quotes the Rᴇsᴛᴀᴛᴇᴍᴇɴᴛ (Sᴇᴄᴏɴᴅ) ᴏғ Tᴏʀᴛs § 876 (2006),[11] entitled "Persons Acting in Concert" which provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

---

[11] This version of the restatement is an updated version and not the one from 1965 quoted by the jury instruction. The substance of the two versions are the same, the only difference being that the newer one quoted here has been subdivided into three sections using letters.

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

The comment to WIS JI—CIVIL 1740 also quotes the following language from the comment to section (a) of RESTATEMENT (SECOND) OF TORTS § 876 above:

Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. The agreement need not be expressed in words and may be implied and understood to exist from the conduct itself. Whenever two or more persons commit tortious acts in concert, each becomes subject to liability for the acts of the others, as well as for his own acts.

¶ 23. WISCONSIN JI—CIVIL 1740 and its comment are a powerful indication of how WIS. STAT. § 895.045(2) should be interpreted. The jury instruction clearly connects the pre-1995 case law on concerted action to § 895.045(2). The only possible conclusion that can be drawn from the committee's extensive reliance on *Collins* is that it was cited for no other reason than to show that the common law concerted action theory discussed in *Collins*, *Ogle* and *Bruttig* is indeed the exact same theory as the one set forth in § 895.045(2). Thus, we disagree with Richards that this conclusion is absurd or unreasonable.

¶ 24. The committee's lengthy references to RESTATEMENT (SECOND) OF TORTS § 876 and its comment further support the conclusion that although, as noted in *Collins*, the restatement has never been explicitly adopted in Wisconsin, the theory of liability set forth in WIS. STAT. § 895.045(2) is clearly the same as the one discussed in the restatement. In light of WIS JI—CIVIL

1740 and its comment, we conclude that § 895.045(2) is not a new theory of liability, and instead, a recognition of the principles discussed in *Collins, Ogle* and *Bruttig*, and explained by RESTATEMENT (SECOND) OF TORTS § 876.

██

¶ 25. Consistent with *Collins, Ogle* and *Bruttig*, we therefore hold that in order for concerted action liability to attach under WIS. STAT. § 895.045(2), the persons held liable must have acted in accordance with "a common scheme or plan to *accomplish the result that injures the plaintiff*," WIS JI—CIVIL 1740 (emphasis added), and there must have been an agreementtacit or expressabout that common scheme or plan, *Collins*, 116 Wis. 2d at 184. The focus ought to be on the conduct of the persons alleged to have engaged in the "common scheme or plan" and the inquiry should concentrate on whether *that conduct caused the injury*. In other words, concerted action liability attaches when two or more persons commit a *tortious* act in concert. *See* RESTATEMENT (SECOND) OF TORTS § 876. Hence, even if an agreement exists, if that agreement does not directly relate to the tortious conduct that caused the injury, that agreement is insufficient to satisfy the agreement required for concerted action. *See Collins*, 116 Wis. 2d at 184. The clearest, and to date only, example of a situation involving liability for concerted action is the drag racing scenario in *Ogle* where both drivers engaged in the tortious conduct but where only one of them ultimately caused the fatal crash. *Id.*, 33 Wis. 2d at 135.

██

¶ 26. We stress that the liability in a situation involving concerted action is not merely joint and several, but *equal* among all of the negligent parties, making a determination of relative negligence unnecessary. *See Collins*, 116 Wis. 2d at 184. Therefore, as the

718

court noted in *Bruttig*, in a case where the relative negligence of each defendant is assessed individually, a concerted action inquiry would be inherently inconsistent and may not be undertaken. *See id.*, 154 Wis. 2d at 280–81. We observe that the scarcity of pre-1995 Wisconsin case law addressing concerted action liability, and the eleven years it has taken since the enactment of WIS. STAT. § 895.04(2) for an appellate court to interpret the statute, in and of itself indicate that the principle is only rarely and judiciously invoked.

¶ 27. Applying these conclusions to the facts of this case, it becomes apparent that the trial court erred in ruling that WIS. STAT. § 895.045(2) could be applied to this case. Although it is undisputed that Schrimpf and Pratchet are liable as providers of alcohol under WIS. STAT. §§ 125.07(1)(a)1. and 125.035(4)(a), this fact does not give Richards a cause of action for concerted action under 895.045(2). Zimmerlee, Schrimpf and Pratchet had an agreement to purchase alcohol. This agreement had nothing to do with Zimmerlee driving while intoxicated some twelve hours later. Because the act that caused the injury was Zimmerlee driving while intoxicated, and because Pratchet did not engage in a "common scheme or plan" to drive while intoxicated, Zimmerlee, Schrimpf and Pratchet cannot be subject to concerted action liability under 895.045(2) for the injury that resulted from Zimmerlee driving while intoxicated. Stated differently, conceded liability for procuring alcohol for an underage drinker who later causes injury when he or she drives while intoxicated cannot constitute a "concerted action" under § 895.045(2), when the common plan to purchase alcohol is not also a "common scheme or plan" to engage in the conduct that caused the injury.

719

¶ 28. Moreover, consistent with *Bruttig*, having stipulated that the relative negligence of Zimmerlee, Schrimpf and Pratchet would be assessed individually, it would be wholly inconsistent for Richards to be allowed to hold all of the defendants equally liable. Indeed, because a comparative negligence inquiry is required under WIS. STAT. §§ 125.07(1)(a)1. and 125.035(4)(a), *see Sorensen*, 119 Wis. 2d at 646 (procurer of alcohol is liable for negligence in the proportion that procurer's negligence in providing alcohol is "a substantial factor in causing the accident or injuries as determined under the rules of comparative negligence"), allowing concerted action liability to attach via negligence for procuring alcohol is inherently inconsistent.[12]

¶ 29. We are troubled that the Dissent is unwilling to accept the clear and unequivocal dictates of

---

[12] We note that joint and several liability under WIS. STAT. § 895.045(1) is not to be confused with joint and several liability under § 895.045(2). Unlike § 895.045(1), where joint and several liability attaches after shares of causal negligence are individually attributed to the various tortfeasors and one tortfeasor is found to be 51% or more liable, when multiple tortfeasors are engaged in concerted action and are jointly and severally liable under § 895.045(2), shares of causal negligence are never attributed because all tortfeasors are equally liable. Here, shares of causal negligence were individually appointed to Zimmerlee, Schrimpf, and Pratchet under the rules of comparative negligence because such an appointment was a requirement for a finding of negligence under WIS. STAT. §§ 125.035(4)(a) and 125.07(1)(a)1. For this reason, it is obvious that the negligence claim in this case was inherently inapplicable to § 895.045(2). We note, however, that under the facts of this case where Zimmerlee's share of the causal negligence was 72%, had Richards not entered into a *Pierringer* release with Zimmerlee, she could have sought to hold Zimmerlee jointly and severally liable under § 895.045(1) because Zimmerlee alone was more than 51% liable.

Wisconsin courts, and claims that WIS. STAT. § 895.045(2) applies to this case. In fact, the Dissent blatantly declares that our analysis has "overly complicated a simple matter by attempting to read the tea leaves of cases and concepts that are not on point." Dissent, ¶ 4. In so asserting, the Dissent makes a myopic and unconvincing attempt to explain why the cases we cite are allegedly "not on point," and does not even recognize that WIS JI—CIVIL 1740 is based on those exact cases, much less explain why the Wisconsin Civil Jury Instruction Committee would have relied on them in fashioning WIS JI—CIVIL 1740 if they are "not on point." Indeed, beyond accusing us of relying on cases that are "not on point," the Dissent does absolutely nothing to justify a conclusion that directly contradicts both established case law and the newly-adopted jury instruction.

¶ 30. Regrettably, the Dissent invites confusion into the doctrine of joint and several liability in Wisconsin, and incorrectly implies that WIS. STAT. § 895.045(2) introduces a new cause of action by concluding that joint and several liability under § 895.045(2) can be applied to cases that involve procuring alcohol for an underage person under WIS. STAT. §§ 125.035(4)(a) and 125.07. The Dissent is particularly disconcerting because, in attacking the Majority, it misleads the public without any legal justification by implying that this court is not bound by precedent, and by dismissing unquestionably relevant case law as simply "not on point."

¶ 31. Accordingly, because we conclude that the trial court erred in ruling that a question of fact existed as to whether Zimmerlee, Schrimpf, and Pratchet acted according to a "common scheme or plan" under WIS. STAT. § 895.045(2), the trial court's factual conclusion holding Badger Mutual jointly and severally liable was

also erroneous.[13] Consequently, we reverse the portion of the judgment that found Badger Mutual jointly and severally liable for Pratchet's negligence and remand the matter to the trial court for entry of judgment consistent with this opinion.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

¶ 32. FINE, J. (*dissenting*). The statute here, WIS. STAT. § 895.045(2), is plain. As material, it reads: "[I]f 2 or more parties act in accordance with a common scheme or plan, those parties are jointly and severally liable for all damages resulting from that action." The statute has two parts:

(1) two or more persons "act in accordance with a common scheme or plan," with

(2) resulting damage to someone.

Those "2 or more parties" are then "jointly and severally liable for all damages *resulting* from that action." *Ibid.* (emphasis added).

¶ 33. No one disputes that Tomakia Pratchet, David Schrimpf, and Robert Zimmerlee acted in accordance with a common scheme or plan to buy alcohol for Zimmerlee, who could not lawfully buy it himself. Also, no one disputes, that as a result of Zimmerlee's drink-

---

[13] Richards makes a number of other arguments, claiming that the statute is unambiguous, and that the trial court's factual finding that Zimmerlee, Schrimpf and Pratchet acted in accordance with a common scheme or plan is not clearly erroneous. Our conclusion that the trial court incorrectly applied WIS. STAT. § 895.045(2) to this case renders these arguments irrelevant. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (unnecessary to address non-dispositive issues).

ing the alcohol bought for him by Pratchet, he killed Christopher Richards by ramming Richards's car.

¶ 34. Richards would not have been killed by Zimmerlee if Zimmerlee had not been drunk as a result of drinking the alcohol bought for him by Pratchet. Under the unambiguous language of WIS. STAT. § 895.045(2), set out above, that ends our analysis. *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 662, 681 N.W.2d 110, 123–124 (unless there is a constitutional infirmity or a lack of clarity, we take and apply statutes as they are written).

¶ 35. In my view, the Majority has overly complicated a simple matter by attempting to read the tea leaves of cases and concepts that are not on point because they pre-date what the legislature did in 1995, and thus, in my view, are inapplicable. As *Kalal* reminds us, "[o]urs is 'a government of laws not men,' and 'it is simply incompatible with democratic government, or indeed, even with fair government, to have the meaning of a law determined by what the lawgiver meant, rather than by what the lawgiver promulgated.' " *Id.*, 2004 WI 58, ¶ 52, 271 Wis. 2d at 667, 681 N.W.2d at 126 (quoted source omitted). WISCONSIN STAT. § 895.045(2) is plain and applies here.

¶ 36. I respectfully dissent and would affirm.