Michelle RICHARDS,
Plaintiff-Respondent-Petitioner,

v.

BADGER MUTUAL INSURANCE COMPANY,
Defendant-Third-Party Plaintiff-Appellant,

David SCHRIMPF, Defendant-Third-Party Plaintiff,

v.

Tomakia PRATCHET, Third-Party Defendant.

Supreme Court

*No. 2005AP2796. Oral argument October 4, 2007.
—Decided June 3, 2008.*

2008 WI 52

(Also reported in 749 N.W.2d 581.)

ABRAHAMSON, C.J., dissents.
BRADLEY and BUTLER, JR., JJ., join.

For the plaintiff-respondent-petitioner there were briefs by *James J. Murphy, Keith R. Stachowiak* and *Murphy & Prachthauser,* Milwaukee, and oral argument by *Keith R. Stachowiak.*

For the defendant-third-party plaintiff-appellant there was a brief by *Eric S. Darling* and *Schmidt, Darling & Erwin,* Milwaukee, and oral argument by *Eric S. Darling.*

An amicus curiae brief was filed by *Ralph A. Weber, Beth Ermatinger Hanan* and *Gass Weber Mullins LLC,* Milwaukee, and oral argument by *Ralph A. Weber,* on behalf of Civil Trial Counsel of Wisconsin.

An amicus curiae brief was filed by *James A. Fried-man, Joshua P. Dau* and *Godfrey & Kahn S.C.,* Madison, on behalf of the Wisconsin Insurance Alliance and the Property Casualty Insurers Association of America, and oral argument by *James A. Friedman.*

An amicus curiae brief was filed by *William C. Gleisner, III,* on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. We are asked to review a decision of the court of appeals that reversed the circuit court's decision,[1] which concluded that the stipulated facts of this case present a "common scheme or plan" that invokes joint and several liability under Wis. Stat. § 895.045(2) (2005–06).[2] We affirm the court of appeals.

¶ 2. We conclude as follows: (1) Wis. Stat. § 895.045(2) is the legislative codification of the concerted action theory of liability; (2) the damages in this case resulted from the consumption of beer to the point of intoxication and the subsequent decision to drive while intoxicated; and (3) although Robert Zimmerlee, David Schrimpf, and Tomakia Pratchet acted "in accordance with a common scheme or plan" to procure beer, they did not so act in consuming beer to the point of intoxication and in the subsequent act of driving while intoxicated, and, therefore, David Schrimpf is not jointly and severally liable under § 895.045(2) for the death of Chris Richards. Accordingly, Badger Mutual Insurance Company is relieved from making any further payment to Michelle Richards.

---

[1] The Honorable Patricia D. McMahon of Milwaukee County presiding.

[2] All further references to the Wisconsin Statutes are to the 2005–06 version, unless otherwise noted.

546

## I. BACKGROUND

¶ 3. An ill-conceived idea between teenagers to "get some beer" one evening culminated in tragedy the next morning when an intoxicated Robert Zimmerlee, 19, failed to stop for a stop sign and smashed into the driver's side of Christopher Richards' vehicle, killing him instantly. Chris' wife, Michelle Richards (Richards), sought to recover damages. She initially pursued a negligence claim against Zimmerlee and his insurer. The parties settled on a *Pierringer*[3] basis for $1,312,500,[4] and Zimmerlee is therefore not a party to this appeal. After Richards received the settlement, she then brought a wrongful death action against David Schrimpf, 19, who was the passenger in Zimmerlee's car, and Schrimpf's insurer, Badger Mutual Insurance Company, pursuant to Wis. Stat. § 895.04. Richards alleged that Schrimpf illegally procured beer and that Zimmerlee's consumption of the beer resulted in Christopher Richards' wrongful death. Schrimpf joined Tomakia Pratchet, who purchased the beer for Zimmerlee and Schrimpf, in the litigation.

¶ 4. The parties have stipulated to the facts in this case. Events leading to the accident unfolded the prior evening, when Schrimpf and Zimmerlee decided to "go get some beer." Schrimpf was employed at a West Allis restaurant, and he said that one of his co-workers, Pratchet, would be able to purchase the beer for them because she was of-age.

¶ 5. Zimmerlee and Schrimpf drove together to Schrimpf's employer, where Pratchet was working that

---

[3] *Pierringer v. Hoger,* 21 Wis. 2d 182, 124 N.W.2d 106 (1963).

[4] The parties stipulated that Richards' total damages equal $1,785,714.29.

evening. Schrimpf entered and spoke with Pratchet about her purchasing beer for him and Zimmerlee. Pratchet agreed. Schrimpf also spoke with another co-worker, Jennifer Spencer, who invited Schrimpf to a party at her home that evening.

¶ 6. From the restaurant, Zimmerlee, Schrimpf, and Pratchet traveled together to a nearby grocer, where Pratchet purchased an 18–pack of beer for Zimmerlee and Schrimpf with money Zimmerlee provided. The two dropped Pratchet off at a bus stop and Zimmerlee and Schrimpf went their separate ways for several hours, with the beer remaining in Zimmerlee's car.

¶ 7. Later that evening, Schrimpf and Zimmerlee reconnected, and with 18–pack in tow, arrived at Spencer's party between 12 midnight and 1:00 a.m. While Schrimpf drank "some" of the beer, Zimmerlee consumed "maybe half" of the 18 beers.

¶ 8. At approximately 7:30 a.m., the duo left Spencer's party. Schrimpf sat in the passenger seat, and Zimmerlee took the wheel of his car. They proceeded only half a block before colliding with Chris Richards' vehicle.

¶ 9. Two days before trial was set to commence, the parties entered into a settlement agreement. By the terms of that settlement agreement, the jury trial was waived and the parties agreed to allow the circuit judge to decide the question of whether Zimmerlee, Schrimpf, and Pratchet acted in accordance with a common scheme or plan that caused damage to Chris and Michelle Richards. The circuit court answered that question in the affirmative and held the parties jointly and severally liable for Richards' damages.

¶ 10. There is no dispute that Zimmerlee was negligent in the operation of his vehicle and that his

negligence was a cause of the accident and death of Chris Richards. There is also no dispute that the beer was a substantial factor in causing the accident and the death. Both Schrimpf and Pratchet were "providers" of alcoholic beverages to Zimmerlee, as defined by Wis. Stat. § 125.035(2) and were therefore negligent under Wis. Stat. § 125.07(1)(a)1.

¶ 11. The parties also agreed to the apportionment of causal negligence among them: Zimmerlee at 72 percent; Schrimpf at 14 percent; and Pratchet at 14 percent. The parties stipulated to Richards' damages and that Schrimpf's and Pratchet's combined causal negligence resulted in $500,000 of the total damages, or $250,000 each. Accordingly, the parties agreed that Richards was to be paid $250,000, as Schrimpf's share of the total damages, regardless of the outcome of this lawsuit. If the final court decision in this case concluded that the parties did not act in accordance with a common scheme or plan that resulted in Richards' damages, Richards would not receive the 14 percent of the damages that remained unpaid. If, however, it was concluded that the parties did act in accordance with such common scheme or plan that caused Richards' damages, then Schrimpf and Pratchet would be jointly and severally liable to Richards and, therefore, Schrimpf, and thereby Badger Mutual, would be required to pay Richards an additional $250,000 to cover the remainder of the damages.

¶ 12. What the parties dispute is whether the foregoing stipulated facts give rise to joint and several liability under Wis. Stat. § 895.045(2). The parties contest whether Zimmerlee, Schrimpf, and Pratchet acted in accordance with a common scheme or plan that resulted in Richards' damages, as those terms are used in § 895.045(2).

¶ 13. The court of appeals concluded that the parties were not jointly and severally liable under Wis. Stat. § 895.045(2) for Richards' damages. It held that, although the parties "had an agreement to purchase alcohol," that agreement did not include Zimmerlee's driving while intoxicated, which resulted in the damages. *Richards v. Badger Mut. Ins. Co.*, 2006 WI App 255, ¶ 27, 297 Wis. 2d 699, 727 N.W.2d 69. Richards petitioned for review, which we granted.

## II. DISCUSSION

### A. Standard of Review

¶ 14. The outcome of this case hinges on the interpretation and application of Wis. Stat. § 895.045(2). The interpretation and application of a statute are questions of law that we review independently, "but benefiting from the analyses of the court of appeals and the circuit court." *Marder v. Bd. of Regents of the Univ. of Wis. Sys.*, 2005 WI 159, ¶ 19, 286 Wis. 2d 252, 706 N.W.2d 110.

### B. The Parties' Positions

¶ 15. Both parties posit that Wis. Stat. § 895.045(2) is unambiguous; however, they offer differing interpretations and applications of it under the facts before us. Before turning to a discussion of the language of the statute, it is instructive to recount briefly the parties' respective arguments.

#### 1. Richards' position

¶ 16. Richards argues that the parties agree that Zimmerlee, Schrimpf, and Pratchet acted in accordance with a common scheme or plan to purchase beer. She

also asserts that the parties agree that "as a result of drinking the beer bought for [Zimmerlee] pursuant to his and Schrimpf's joint scheme and plan, Zimmerlee killed Mr. Richards by the intoxicated use of his vehicle." Further, Richards asserts that the parties have stipulated that the beer was a substantial factor in the cause of Chris Richards' death. Richards refers to Judge Fine's dissent as a succinct presentation of her argument: The stipulated facts require the conclusion that Chris Richards "would not have been killed by Zimmerlee if Zimmerlee had not been drunk as a result of drinking alcohol [bought] for him by Pratchet." *Richards,* 297 Wis. 2d 699, ¶ 34 (Fine, J., dissenting). Richards contends that those facts evidence a common scheme or plan that falls within Wis. Stat. § 895.045(2), resulting in joint and several liability for all three defendants.

¶ 17. Furthermore, Richards argues that cannons of statutory interpretation preclude this court's consideration of the title of Wis. Stat. § 895.045(2), "Concerted action," when interpreting the statute. Richards argues that, because the statute is plain on its face, it is improper for the court to consider extrinsic sources to facilitate its interpretation, and because Wisconsin law provides that titles of statutes are not part of the statute, the title to § 895.045(2) is an extrinsic source. The import of Richards' argument in this regard is two-fold: (1) we have not adopted the concerted action theory of liability, as embodied in Restatement (Second) of Torts § 876, even though it is incorporated into Wisconsin Jury Instruction 1740 that attends § 895.045(2). Therefore, the so-called, but misnamed, "concerted action cases" that predate § 895.045(2) provide no guidance in interpreting the statute; and (2) the enactment of § 895.045(2) did not alter the law in Wisconsin that causal negligence is predicated on whether

551

an act or omission is a substantial factor in causing harm. Here, it was stipulated that the beer was a substantial factor in causing the accident that killed Chris Richards.

### 2. Badger Mutual's position

¶ 18. In response, Badger Mutual argues that, while Richards correctly asserts that the statute is unambiguous, Richards nevertheless misapprehends the statute's meaning. First, Badger Mutual contends that "Concerted action" is the title for the theory of liability described in Wis. Stat. § 895.045(2), as shown by the discussions in Wisconsin cases. Badger argues that because the concerted action theory of liability embodied in § 895.045(2) is the concerted action referred to in Wisconsin case law, subsection (2) requires that all parties have equal causal negligence. Consequently, because the parties stipulated to apportionment of causal negligence among Zimmerlee, Schrimpf, and Pratchet, their liability to Richards falls within subsection (1), not within subsection (2) of § 895.045.

¶ 19. Second, Badger Mutual acknowledges that while Schrimpf's conduct was a substantial factor in causing the accident, it did not also constitute concerted action, as is required before it falls within Wis. Stat. § 895.045(2). Badger Mutual contends that the Restatement (Second) of Torts § 876 and the common law in regard to concerted action support its position. Badger Mutual contends that the common scheme or plan to purchase beer did not damage Chris Richards. It was the reckless driving while intoxicated that resulted in damage to Chris Richards. However, the reckless driving was not part of a common scheme or plan in which Zimmerlee, Schrimpf, and Pratchet participated. Accordingly, it concludes that Schrimpf's liability to Rich-

ards falls within the parameters of § 895.045(1), not those of subsection (2).

C. Interpretation of Wis. Stat. § 895.045(2)

1. General principles

¶ 20. Statutory interpretation "begins with the language of the statute." *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting *Seider v. O'Connell,* 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659). We assume that the meaning of a statute is expressed in the words the legislature chose. *Id.,* ¶ 44. The context in which the operative language appears is important too because a statute's meaning may be affected by the context in which the words chosen by the legislature are used. *Id.,* ¶ 46. If our focus on the statute's language yields a plain, clear meaning, then there is no ambiguity, and the statute is applied according to its plain terms. *Id.* If the statutory language is unambiguous, it is unnecessary to consult extrinsic sources to facilitate interpretation. *Id.*

¶ 21. However, if a statute is "capable of being understood by reasonably well-informed persons in two or more senses[,]" then the statute is ambiguous. *Id.,* ¶ 47. When a statute is ambiguous, we may resort to extrinsic sources, such as legislative history, to assist our understanding of the statute's meaning. *Id.,* ¶ 48.

2. Statutory history

¶ 22. A review of statutory history is part of a plain meaning analysis. *Id.,* ¶ 69. Statutory history

553

encompasses the previously enacted and repealed provisions of a statute. By analyzing the changes the legislature has made over the course of several years, we may be assisted in arriving at the meaning of a statute. *Id.* Therefore, statutory history is part of the context in which we interpret the words used in a statute. Accordingly, we examine the statutory history that underlies the current version of Wis. Stat. § 895.045.

¶ 23. The early common law rule of contributory negligence that existed prior to 1931, when the predecessor to Wis. Stat. § 895.045(1) was enacted, required that any contributory negligence of a plaintiff was a complete bar to recovery. *Brewster v. Ludtke,* 211 Wis. 344, 346, 247 N.W. 449 (1933). Also at common law, joint and several liability was the rule, such that when multiple tortfeasors caused injury to a plaintiff who was not contributorily negligent, the plaintiff could recover his or her entire damages from any tortfeasor. *Group Health Coop. of Eau Claire v. Hartland Cicero Mut. Ins. Co.,* 164 Wis. 2d 632, 634–35, 476 N.W.2d 302 (Ct. App. 1991).

¶ 24. In 1931, the legislature established statutory comparative negligence.[5] This change in the law permitted a plaintiff who was contributorily negligent to recover damages if his or her negligence was less than the negligence of the person from whom recovery was sought. *Lupie v. Hartzheim,* 54 Wis. 2d 415, 416, 195 N.W.2d 461 (1972). However, the adoption of comparative negligence did not change the common law rule of joint and several liability for the tortfeasors. *Walker v. Kroger Grocery & Baking Co.,* 214 Wis. 519, 535, 252 N.W. 721 (1934).

---

[5] Wis. Stat. § 331.045 (1931); ch. 242, Laws of 1931.

¶ 25. In 1971, the legislature renumbered the comparative negligence statute to Wis. Stat. § 895.045. It continued to permit a plaintiff who was not more negligent than the defendant from whom recovery was sought to recover damages, reduced by the amount of the plaintiff's negligence.[6] Once again, this change did not affect the common law rule of joint and several liability. *Group Health,* 164 Wis. 2d at 637. Therefore, in suits involving multiple tortfeasors, a comparison of the negligence of the plaintiff with that of any tortfeasor continued to be made and the full amount of damages[7] could be recovered from any tortfeasor who was more negligent than the plaintiff, even though a second tortfeasor may have been more negligent than the tortfeasor from whom recovery was sought. *Matthies v. Positive Safety Mfg. Co.,* 2001 WI 82, ¶ 10, 244 Wis. 2d 720, 628 N.W.2d 842.

¶ 26. The current version of Wis. Stat. § 895.045 was created by 1995 Wis. Act 17. That Act amended comparative negligence in subsection (1) and created subsection (2). In subsection (1), the legislature chose to significantly change the law of joint and several liability by limiting the circumstances under which joint and several liability could be applied. *Id.* The relevant portion of § 895.045(1) provides:

> Comparative negligence. . . . The negligence of the plaintiff shall be measured separately against the negligence of each person found to be causally negligent. The liability of each person found to be causally negligent whose percentage of causal negligence is less than

---

[6] Wis. Stat. § 895.045 (1971); ch. 47, Laws of 1971.

[7] The amount due the plaintiff was always first reduced by the percentage of plaintiff's negligence. *See Matthies v. Positive Safety Mfg. Co.,* 2001 WI 82, ¶ 10, 244 Wis. 2d 720, 628 N.W.2d 842.

51% is limited to the percentage of the total causal negligence attributed to that person. A person found to be causally negligent whose percentage of causal negligence is 51% or more shall be jointly and severally liable for the damages allowed.

Under revised subsection (1), a contributorily negligent plaintiff is precluded from recovering more of his or her damages from a tortfeasor than the tortfeasor's causal negligence bears to the total causal negligence. *Id.* For those tortfeasors, the common law rule of joint and several liability is abrogated. *See id.* Only when a tortfeasor is at least 51 percent causally negligent will the tortfeasor be jointly and severally liable for all damages attributed to all tortfeasors in the comparisons made under subsection (1). Therefore, in many cases involving joint tortfeasors and a contributorily negligent plaintiff, there no longer is joint and several liability.

¶ 27. In amending Wis. Stat. § 895.045 in 1995, the legislature also created subsection (2). This subsection retains the common law rule of joint and several liability in the circumstances described in the statute. Subsection (2) provides:

Concerted action. Notwithstanding sub. (1), if 2 or more parties act in accordance with a common scheme or plan, those parties are jointly and severally liable for all damages resulting from that action, except as provided in s. 895.043(5).[8]

Subsection (2), which the legislature chose to title "Concerted action," retains the common law rule of joint and several liability, if "that action" is taken in accordance with a common scheme or plan resulting in

---

[8] Wisconsin Stat. § 895.043(5) provides: "The rule of joint and several liability does not apply to punitive damages."

damages. However, while demonstrating a legislative choice to significantly reduce the occasions where joint and several liability may be awarded, the statutory history underlying § 895.045 does not resolve the meaning of the terms, "common scheme or plan" and "that action" "resulting" in damages that are before us in this review. Nor does it shed light on the title of subsection (2), "Concerted action." However, it does inform us that the legislature meant to proscribe the occasions for imposition of joint and several liability.[9]

3. Ambiguity

¶ 28. Richards urges us to interpret Wis. Stat. § 895.045(2) such that it applies to persons engaged in a common scheme or plan to accomplish a result that in combination with other acts ultimately causes harm. Richards asserts that common law concerted action is not what the legislature meant to describe in subsection (2). Badger Mutual contends that the action that causes the harm must be undertaken to facilitate the common scheme or plan[10] and that subsection (2) does embody

***

[9] The amicus brief of Wisconsin Academy of Trial Lawyers cites *Fuchsgruber v. Custom Accessories, Inc.*, 2001 WI 81, 244 Wis. 2d 758, 628 N.W.2d 833, as support for its assertion that the 1995 amendments to Wis. Stat. § 895.045 did not intend to change the common law rule of joint and several liability. Reliance on *Fuchsgruber* for that proposition is misplaced. *Fuchsgruber* explained that a claim for strict products liability is not a negligence action under the common law; and therefore, because § 895.045(1) involves negligence, it has no application to claims of strict products liability. *Id.*, ¶¶ 1–3.

[10] Badger Mutual's position is similar to that of the court of appeals, which concluded that Wis. Stat. § 895.045(2) applies to persons engaged in " 'a common scheme or plan to *accomplish the result that injures the plaintiff* . . . .' " *Richards v. Badger*

common law concerted action. These competing inter-
pretations of the terms and the title of § 895.045(2) are
both reasonable interpretations. They indicate that the
statute is "capable of being understood by reasonably
well-informed persons in two or more senses" and is
therefore ambiguous. *Kalal,* 271 Wis. 2d 633, ¶ 47.

¶ 29. When confronted with an ambiguous stat-
ute, we may resort to extrinsic sources to help uncover
the statute's meaning. *Id.,* ¶ 48. The legislative history
now available that relates to the creation of subsection
(2) of Wis. Stat. § 895.045 is sparse. However, the
Legislative Reference Bureau Analysis of an earlier
version of the 1995 changes in § 895.045 that were
eventually enacted states:

> This bill modifies the comparative negligence sys-
> tem in several ways. The bill requires that the negli-
> gence of the plaintiff be measured separately against
> each of the joint tort-feasors. Under this bill, a joint
> tort-feasor's liability is limited to the percentage of the
> total causal negligence attributed to that party.
>
> The bill specifies that the changes in the rule of
> joint and several liability do not apply to parties whose
> concerted action results in damages . . .

Drafting File for 1995 Wis. Act 17, *Analysis by the
Legislative Reference Bureau* of 1995 S.B. 11, Legisla-
tive Reference Bureau, Madison, Wis. The LRB's analy-
sis supports our conclusion that the 1995 changes to
§ 895.045 were meant to significantly change the com-
mon law rule of joint and several liability that had
applied to negligence actions in the past. However, the

*Mut. Ins. Co.,* 2006 WI App 255, ¶ 25, 297 Wis. 2d 699, 727
N.W.2d 69 (emphasis in original).

legislative history provides limited guidance with respect to the statutory terms in subsection (2) that we must interpret.

¶ 30. The title is not part of a statute according to Wis. Stat. § 990.001(6); however, it may be used to assist in understanding a statute's meaning. *Brennan v. Employment Relations Comm'n,* 112 Wis. 2d 38, 41, 331 N.W.2d 667 (Ct. App. 1983). We note that the title to Wis. Stat. § 895.045(2) is "Concerted action." Concerted action is a theory of liability that comes from the common law, as do key words the legislature chose to use in subsection (2), such as "common scheme or plan." Accordingly, we review Wisconsin's common law and the learned treatises cited therein for guidance in interpreting the title and terms of subsection (2). *See, e.g., Strenke v. Hogner,* 2005 WI 25, ¶¶ 15, 16, 19, 279 Wis. 2d 52, 694 N.W.2d 296 (explaining that the words used by the legislature in Wis. Stat. § 895.85(3) derive in large part from the common law; and therefore, a review of the common law is helpful to statutory interpretation).

4. Wisconsin appellate decisions

¶ 31. Four published appellate opinions offer potential guidance on the meaning of Wis. Stat. § 895.045(2). *Danks v. Stock Bldg. Supply, Inc.,* 2007 WI App 8, 298 Wis. 2d 348, 727 N.W.2d 846; *Bruttig v. Olsen,* 154 Wis. 2d 270, 453 N.W.2d 153 (Ct. App. 1989); *Collins v. Eli Lilly Co.,* 116 Wis. 2d 166, 342 N.W.2d 37 (1984); and *Ogle v. Avina,* 33 Wis. 2d 125, 146 N.W.2d 422 (1966).

¶ 32. *Danks* provides only the briefest interpretation of Wis. Stat. § 895.045(2). There, liability for a personal injury was at issue. Danks was injured while

assisting his supervisor load a truss onto a truck belonging to the manufacturer of the truss, Stock Building Supply. *Danks,* 298 Wis. 2d 348, ¶ 1. Stock Building Supply had given specific written instructions that the truss was not to be lifted in the manner used at the time of the accident. *Id.,* ¶ 6. When the truss failed due to the improper lift, it fell and Danks was injured. *Id.,* ¶ 13.

¶ 33. Danks had several theories under which he attempted to impose liability on Stock Building Supply. One of those theories was concerted action liability, in which Danks contended that the lifting of the truss was undertaken in accordance with a common scheme or plan pursuant to Wis. Stat. § 895.045(2). *Id.,* ¶ 38. The court of appeals decision concluding that Stock Building Supply was not liable turned on the lack of an affirmative act of negligence by Stock Building Supply. *Id.,* ¶ 22.

¶ 34. However, *Danks* does interpret Wis. Stat. § 895.045(2) as pertaining only to tortfeasors who take concerted action. *Id.,* ¶ 39. *Danks* does not discuss the meanings of "Concerted action" or "common scheme or plan," but it does note that those who act "in concert" will come within the parameters of subsection (2):

> Subsection (2) simply modifies subsection (1) of the statute to provide that all defendants who are legally responsible for causing a plaintiff's damages, and who acted in concert in so doing, are jointly and severally liable for the plaintiff's damages, irrespective of whether a given defendant's apportioned causal negligence is less than 51%.

*Id. Danks* continues to conclude that "§ 895.045(2) plays no role to determine *whether* a given defendant may be held liable." *Id.,* ¶ 40 (emphasis in original).

560

Rather, a defendant must be liable before subsection (2) may be applied. *Id.* Stated otherwise, *Danks* determined that subsection (2) does not create a claim for relief, but instead applies only when a defendant is already liable for damages under the substantive law. That is, he or she is causally negligent to a greater extent than the plaintiff; and in addition, he or she participated in concerted action that resulted in the plaintiff's damages. *Id.*, ¶¶ 39–40.

¶ 35. *Collins* precedes *Danks* and the 1995 revisions of Wis. Stat. § 895.045. There we discussed concerted action as a theory of liability and relied on the explanation of that theory by Professor Prosser. *Collins,* 116 Wis. 2d at 184. In it we explained that:

> The concerted action theory of liability rests upon the principle that "those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts done for their benefit, are equally liable with him. Express agreement is not necessary, and all that is required is that there be a tacit understanding."

*Id.* (quoting W. Prosser, *Handbook of The Law of Torts* § 46, at 292 (4th ed. 1971)). However, we declined to apply the concerted action theory when the plaintiff, who sought damages from former manufacturers of the drug diethylstilbestrol (DES) that caused an aggressive form of cervical cancer, could not identify the specific manufacturer of the DES that was taken by her mother. *Id.* at 186.

¶ 36. *Collins* explained that the concerted action theory required an agreement among the parties. *Id.* at 185. The allegation of Collins was that the "defendants failed to adequately test [DES] or to give sufficient

561

warning[s] of its dangers." *Id.* We noted that there had been "a substantial amount of parallel action by the defendants in producing and marketing DES" but that activity did not "rise to the level of 'acting in concert.'" *Id.* We so concluded because there was no agreement that the testing and warnings would be inadequate, and it was that type of "agreement" that would have been required to show concerted action caused the plaintiff's harm. *Id.*

¶ 37. *Collins* is helpful to our analysis. For example, the specificity of the subject matter of the common plan in *Collins* that we concluded was necessary to support the concerted action theory of liability is important to our consideration of the specificity of the subject matter of the common plan at issue in the case before us. That is, the action that harmed Collins must have been that which was undertaken to further the drug companies' agreement. *Id.* In addition, *Collins* equated "concerted action," the title of Wis. Stat. § 895.045(2) with "pursuance of a common plan," terms employed in the text of subsection (2). *Id.* at 184.

¶ 38. *Bruttig* also tackled the topic of concerted action. There the plaintiff, Brian Bruttig who was a minor, and two friends, also minors, engaged in a game of "snowmobile tag." Brian was injured and recovery was denied because his liability was greater than that of either of the other two tortfeasors. *Bruttig,* 154 Wis. 2d at 273. On appeal, Brian argued that he and the two defendants were equally negligent "because the tag game created a situation of mutual stimulation where the negligence of each participant [was] entirely interrelated with that of the others and therefore each should be charged with the causal negligence of the other." *Id.* at 280. The court of appeals recognized the argument as the theory of concerted action liability in

which "the jury would not be permitted to apportion damages." *Id.* (citing W. Prosser, *Handbook of The Law of Torts* § 46, at 291 (4th ed. 1971)).

¶ 39. The court of appeals noted that the concerted action theory of liability has never been "explicitly adopted" in Wisconsin. *Id.* at 280. It also noted that Brian had not raised this theory of liability in the circuit court. Therefore, it rejected his argument to apply it on appeal. *Id.* at 281.

¶ 40. *Bruttig's* discussion is helpful, as it reviews Brian's claim that the three boys "acted in concert," which terms are similar to the title of subsection (2): "Concerted action." *Bruttig* acknowledges that the theory that Brian is proffering is "a separate theory of liability, that of 'concerted action.' " *Id.* at 280. This is significant because Wis. Stat. § 895.045(2) requires proof of a separate theory of liability for one who may already be a tortfeasor under subsection (1), in order to accord joint and several liability. *Danks,* 298 Wis. 2d 348, ¶ 39. That is, subsection (2) requires a plaintiff to prove that the tortfeasor acted "in accordance with a common scheme or plan" and also that the common scheme or plan the tortfeasor acted in accordance with resulted in damages. *Id.* Subsection (2) is not applicable in every case where joint tortfeasors are present.

¶ 41. Our review of Wisconsin case law that touches on the concerted action theory of liability concludes with *Ogle.* In *Ogle,* we held that both negligent participants in a "drag race" were equally liable for a fatal collision resulting from their negligence, even though only one of the tortfeasors struck a third automobile causing injury. *Ogle,* 33 Wis. 2d at 135.

¶ 42. In *Ogle,* two cars were racing at a high rate of speed in the same direction down a highway, when the lead car collided with the plaintiff's car. *Id.* at

128–30. In holding both defendants equally liable for the collision without specifically referencing "concerted action," we applied the principles of concerted action:

> We think when there is an understanding to reach a common destination and in doing so illegal speed is used and the cars are driven so closely together as to be practically in tandem, or to constitute a unit, that we have a situation of mutual stimulation where the negligence of each participant is so related to the negligence of the other participants that the participants should each be chargeable with the causal negligence of the other as to speed and their percentage of causal negligence should be equal.

*Id.* at 135. The mutual agreement to use excessive speed to reach an agreed upon destination formed the basis for the tortfeasors' concerted action. *Id.*

¶ 43. This court went on to explain in *Ogle* that the usual rule of apportioning causal negligence between tortfeasors whose negligence combined or concurred in causing injury does not apply with "mutual fault" for the injury that occurred. *Id.* Rather, the tortfeasors in *Ogle* each assumed the fault of the other and causal negligence was apportioned equally between them. *Id.* Badger Mutual argues that the concept of equal fault for tortfeasors in concerted actions is significant to the case before us because the parties have agreed to apportioned causal negligence. Richards maintains it has no relevancy.

5. Learned treatises

¶ 44. Because discussions of the concerted action theory of liability in Professor Prosser's *The Law of Torts,* as well as those provided by The Restatement (Second) of Torts, are so prominent in the cases that discuss the concerted action theory of liability, we

review those learned treatises as well, before interpreting and applying Wis. Stat. § 895.045(2). Prosser's explanation of the historic context of the concerted action theory of liability is helpful. It provides:

> The original meaning . . . was that of vicarious liability for concerted action. All persons who acted in concert to commit a trespass, in pursuance of a common design, were held liable for the entire result. In such a case there was a common purpose, with mutual aid in carrying it out; in short, there was a joint enterprise, so that "all coming to do an unlawful act, and of one party, the act of one is the act of all of the same party being present." Each was therefore liable for the entire damage done . . . . [S]ince each was liable for all, the jury would not be permitted to apportion the damages.

W. Page Keeton, *Prosser and Keeton on The Law of Torts* § 46, at 322–23 (5th ed. 1984) (quoted citations omitted). This historic framework for concerted action is helpful to our understanding of the mutuality of agreement that is necessary in order to have a common scheme or plan under the concerted action theory of liability, as well as to understanding the statutory terms used to express the concerted action theory of liability.

¶ 45. Section 876 of the Restatement (Second) of Torts is also helpful. It provides:

Persons Acting in Concert

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

(a) does a tortious act in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Comment on Clause (a): Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. The agreement need not be expressed in words and may be implied and understood to exist from the conduct itself. Whenever two or more persons commit tortious acts in concert, each becomes subject to liability for the acts of the others, as well as for his own acts. The theory of the early common law was that there was a mutual agency of each to act for the others, which made all liable for the tortious acts of any one.

Restatement (Second) of Torts § 876, at 315–16 (1979). The Comment to Clause (a) is particularly helpful in its description of mutual agency and that it was mutual agency that made all the actors liable for one another's tortious acts.

¶ 46. From our review of Wisconsin cases and learned treatises, wherein principles of concerted action are discussed, terms similar to those in Wis. Stat. § 895.045(2) are employed and the concerted action theory of liability is explained, we conclude that § 895.045(2) is the codification of the concerted action theory of liability. The statute is consistent with the concerted action theory as explained by Wisconsin courts[11] and in learned treatises such as Prosser's *The*

---

[11] The understanding of concerted action liability as explained by Wisconsin appellate courts is consistent with the discussions by New York appellate courts. For example, *Blakeslee v. Wadsworth,* 37 A.D.3d 1021 (N.Y. App. Div. 2007),

*Law of Torts* and the Restatement (Second) of Torts § 876. Our decision in this regard is supported by those who considered this question when drafting the Wisconsin Civil Jury Instruction 1740.[12]

¶ 47. Our conclusion that Wis. Stat. § 895.045(2) is the codification of the concerted action theory of liability does not change Wisconsin law in regard to whether the actions of a tortfeasor were a substantial factor in causing harm sustained by another. This is so because in order to fit within the parameters of § 895.045(2), a tortfeasor must already be causally negligent under substantive law. *Danks,* 298 Wis. 2d 348, ¶ 39. One is causally negligent when his or her conduct is a substantial factor in causing injury to

bases the concerted action theory as applied in New York on Professor Prosser's articulation of it, as was quoted by the Wisconsin Supreme Court in *Collins.* The New York courts explain that in order to establish concerted action liability, there must have been an explicit or implicit *agreement* on the part of all alleged wrongdoers. *Blakeslee,* 37 A.D.3d at 1023 (emphasis in original). Moreover, it is 'essential that each defendant charged with acting in concert [has] acted tortiously and that one of the defendants committed an act in pursuance of the agreement which constitutes a tort.' *Canavan v. Galuski,* 2 A.D.3d 1039, 1041 (N.Y. App. Div. 2003) (quoting *Rastelli v. Goodyear Tire Rubber,* 591 N.E.2d 222, 224 (N.Y. 1992)). Mere '[p]arallel activity, without more, is insufficient to establish the agreement element necessary to maintain a concerted action claim.' *Id.* (quoting *Hymowitz v. Eli Lilly Co.,* 539 N.E.2d 1069, 1074–75 (N.Y. 1989)).

[12] Wisconsin Civil Jury Instruction 1740 quotes § 876 of the Restatement (Second) of Torts as well as the "Comment to Clause (a)" of that section. Moreover, the instruction quotes *Collins v. Eli Lilly Co.,* 116 Wis. 2d 166, 342 N.W.2d 37 (1984) in its description of concerted action.

another. *Johnson v. Misericordia Cmty. Hosp.*, 97 Wis. 2d 521, 561, 294 N.W.2d 501 (Ct. App. 1980). Accordingly, under our interpretation of § 895.045(2), a person who is causally negligent with regard to a recovering plaintiff will have proportionate liability under § 895.045(1), unless something more is proved about that tortfeasor's conduct that will bring it within the purview of subsection (2). *Danks,* 298 Wis. 2d 348, ¶ 39.

6. Application of Wis. Stat. § 895.045(2)

¶ 48. There are two possible scenarios under the stipulated facts and the arguments made by Richards wherein she seeks to hold Schrimpf jointly and severally liable under Wis. Stat. § 895.045(2) for her damages: (1) Zimmerlee, Schrimpf, and Pratchet acted in accordance with a common scheme or plan to procure beer and that action resulted in her damages; or (2) Zimmerlee and Schrimpf acted in accordance with a common scheme or plan to drink to intoxication and then drive and that action resulted in her damages. Although Richards interweaves these two scenarios, we will examine them independently.

¶ 49. Concerted action liability is a separate theory of liability that does not apply to all who are proved to be causally negligent. *Danks,* 298 Wis. 2d 348, ¶ 40; *see Bruttig,* 154 Wis. 2d at 280; W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 46, at 322–23 (5th ed. 1984). Something more than causal negligence is required before the actions of a tortfeasor will come within the parameters of Wis. Stat. § 895.045(2). *Danks,* 298 Wis. 2d 348, ¶ 40. Concerted action must be proved.

¶ 50. There are three factual predicates necessary to proving concerted action: First, there must be an explicit or tacit agreement among the parties to act in accordance with a mutually agreed upon scheme or plan. *See Collins,* 116 Wis. 2d at 185. Parallel action, without more, is insufficient to show a common scheme or plan. *Id.* Second, there must be mutual acts committed in furtherance of that common scheme or plan that are tortious acts. *See Ogle,* 33 Wis. 2d at 135. Third, the tortious acts that are undertaken to accomplish the common scheme or plan must be the acts that result in damages. *See Collins,* 116 Wis. 2d at 184–85.

¶ 51. In regard to the actions of Zimmerlee, Schrimpf, and Pratchet, it is undisputed that they agreed to purchase beer. When Schrimpf asked Pratchet to purchase beer and Zimmerlee drove her to the grocery and gave her the money that she used to purchase the beer, they acted "in accordance with a common scheme or plan." Their procurement of beer was tortious. Wis. Stat. §§ 125.035(4)(b); 125.07(1). However, after that purchase, Pratchet had nothing further to do with the beer. She took a bus to an unnamed location. Zimmerlee and Schrimpf became parallel actors. Zimmerlee and Schrimpf separated, with Zimmerlee keeping the beer in his car. The scheme or plan that was common to these three defendants had been completed. Richards had suffered no damages because of actions taken to further that common plan. Something more was required. Therefore, the purchase of beer is insufficient to show concerted action, and to cause Schrimpf's conduct to fall within Wis. Stat. § 895.045(2).

¶ 52. In regard to concluding that there was concerted action between Zimmerlee and Schrimpf result-

ing in Zimmerlee's drinking until intoxicated and then driving, certainly, the consumption of the beer to the point of intoxication and Zimmerlee's driving while intoxicated resulted in Richards' damages. Moreover, the drinking by Zimmerlee and Schrimpf was tortious because they were both under age. Wis. Stat. § 125.07(4)(b). However, there is nothing in the record to show that their drinking was not merely parallel conduct and that Zimmerlee and Schrimpf did not have a common scheme or plan to drink until intoxicated and then to drive. Accordingly, Schrimpf's conduct does not bring him within the parameters of Wis. Stat. § 895.045(2).[13]

¶ 53. In addition, pursuant to the parties' stipulation, Zimmerlee was 72 percent causally negligent in the death of Chris Richards; Schrimpf was 14 percent causally negligent, and Pratchet was 14 percent causally negligent. The apportioned negligence here reflects Schrimpf's and Pratchet's respective several liability. However, with a concerted action theory of liability, each party assumes the causal negligence of the other so that all are equally liable. *See Ogle,* 33 Wis. 2d at 135. Therefore, the parties' stipulation to differing percentages of causal negligence further supports our conclusion that Richards' injury was not the result of concerted action.

---

[13] Schrimpf's involvement with Zimmerlee after the parties purchased the beer resembles the involvement of the defendants in *Blakeslee.* There, the drivers of two vehicles alternately changed lanes on a highway, and the rear driver crashed after dipping his tires onto the right-hand shoulder of the highway. *Blakeslee,* 37 A.D.3d at 1022. The court held that there was insufficient proof to hold the drivers jointly and severally liable under a concerted action theory of liability because the record did not demonstrate that the drivers had an express or implied agreement to engage in a "passing contest." *Id.* at 1022–23.

¶ 54. In sum, we reach the following conclusions: (1) Zimmerlee, Schrimpf, and Pratchet acted in accordance with a common scheme or plan to procure alcohol, but since the action undertaken to accomplish that common scheme or plan was not the act that resulted in Richards' damages, Wis. Stat. § 895.045(2) is inapplicable and therefore Schrimpf is not jointly and severally liable; and (2) the action that did result in Richards' damages was Zimmerlee's drinking until he was intoxicated and his subsequent decision to drive while intoxicated, but since this action was not taken in accordance with a common scheme or plan, § 895.045(2) is again inapplicable and therefore Schrimpf is not jointly and severally liable in that context as well.

### III. CONCLUSION

¶ 55. We conclude as follows: (1) Wis. Stat. § 895.045(2) is the legislative codification of the concerted action theory of liability; (2) the damages in this case resulted from the consumption of beer to the point of intoxication and the subsequent decision to drive while intoxicated; and (3) although Robert Zimmerlee, David Schrimpf, and Tomakia Pratchet acted "in accordance with a common scheme or plan" to procure beer, they did not so act in consuming beer to the point of intoxication and in the subsequent act of driving while intoxicated, and, therefore, David Schrimpf is not jointly and severally liable under § 895.045(2) for the death of Chris Richards. Accordingly, Badger Mutual Insurance Company is relieved from making any further payment to Michelle Richards.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 56. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). The issue presented is whether the defendants

Schrimpf and Pratchet are jointly and severally liable under Wis. Stat. § 895.045(2) for their combined 28 percent causal negligence for the plaintiff's injury. These two engaged in a common scheme or plan to procure alcohol for an underage drinker (Zimmerlee, the driver-defendant with 72 percent causal negligence) who became intoxicated and caused damage to an innocent third party (the plaintiff) by the intoxicated use of a motor vehicle. In other words, the issue is whether Schrimpf is liable to the plaintiff not only for the damages attributed to his causal negligence but also for the damages attributed to Pratchet's causal negligence.

¶ 57. I agree with Judge Fine's short, simple and cogent dissent in the court of appeals. Judge Fine wrote that Wis. Stat. § 895.045(2) is plain and unambiguous and should be applied according to its text; it should be applied as enacted by the legislature, not as rewritten by the court.

¶ 58. I agree with Judge Fine that the court of appeals' majority opinion "overly complicated a simple matter by attempting to read the tea leaves of cases and concepts that are not on point . . . ."[1] This same criticism applies to the majority opinion by this court, which largely adopts the reasoning of the majority opinion in the court of appeals.

¶ 59. The plain language of Wis. Stat. § 895.045(2) is that parties acting in accordance with a common scheme or plan are jointly and severally liable to the plaintiff for all the damages resulting to the plaintiff from that common scheme or plan. Wisconsin Stat. § 895.045(2) provides in full as follows:

---

[1] *Richards v. Badger Mut. Ins. Co.*, 2006 WI App 255, ¶ 35, 297 Wis. 2d 699, 727 N.W.2d 69 (Fine, J., dissenting).

**(2) Concerted action.** Notwithstanding sub. (1), if 2 or more parties act in accordance with a common scheme or plan, those parties are jointly and severally liable for all damages resulting from that action, except as provided in s. 895.043(5).

¶ 60. The parties, the circuit court, and the majority opinion[2] agree that Schrimpf and Pratchet acted in accordance with a common scheme or plan to procure alcohol beverages for the underage driver in the present case. Furthermore, the parties, the circuit court, and the majority opinion[3] agree that Schrimpf and Pratchet's procurement of the alcohol was tortious. Schrimpf and Pratchet stipulated that each was a "provider" of alcohol beverages to the underage driver for purposes of Wis. Stat. § 125.035(4), that is, that they each "procure[d] alcohol beverages for . . . an underage person in violation of s. 125.07(1)(a)."[4]

¶ 61. The parties, the circuit court, and the majority opinion[5] also agree that Schrimpf and Pratchet's

---

[2] *See* majority op., ¶ 51.

[3] *See* majority op., ¶ 10.

[4] Wisconsin Stat. § 125.035(4)(a) provides in full as follows:

In this subsection, "provider" means a person, including a licensee or permittee, who procures alcohol beverages for or sells, dispenses or gives away alcohol beverages to an underage person in violation of s. 125.07(1)(a).

Schrimpf and Pratchet's act of procurement was proscribed by Wis. Stat. § 125.07(1)(a)1., providing that "[n]o person may procure for, sell, dispense or give away any alcohol beverages to any underage person not accompanied by his or her parent, guardian or spouse who has attained the legal drinking age."

When a person is a "provider" for purposes of Wis. Stat. § 125.035(4)(a), such person is not immune to civil liability arising out of the person's act of procuring alcohol beverages. *See* Wis. Stat. § 125.035(2), (4)(b).

[5] *See* majority op., ¶ 11.

573

procurement of the alcohol caused damages to the plaintiff. Schrimpf and Pratchet stipulated that each was "causally negligent" with respect to the plaintiff's damages. Schrimpf and Pratchet stipulated that their combined negligence caused 28 percent of the total damages suffered by the plaintiff.[6]

¶ 62. Under these circumstances, the plain language of Wis. Stat. § 895.045(2) permits only one result: It provides that Schrimpf and Pratchet shall be jointly and severally liable for "all" damages resulting from their common scheme or plan to procure alcohol for the underage driver. No one disputes that 28 percent of the plaintiff's damages resulted from Schrimpf and Pratchet's procurement of alcohol for the underage driver. Wisconsin Stat. § 895.045(2) thus requires, about as clearly as any statute could, that Schrimpf and Pratchet be jointly and severally liable for 28 percent of the plaintiff's total damages.

¶ 63. The majority opinion errs, as Judge Fine stated, in concluding that the question whether a common scheme or plan has resulted in damages for purposes of joint and several liability under Wis. Stat. § 895.045(2) is different from the question whether a

---

[6] The parties stipulated that the plaintiff's total damages were $1,785,714.29. The parties further stipulated that the underage driver-defendant's share of the causal negligence was 72 percent, Schrimpf's share was 14 percent, and Pratchet's share was 14 percent.

The plaintiff has settled all claims against the driver, recovering $1,285,714.29 and satisfying 72 percent of the plaintiff's damages. The plaintiff has recovered $250,000 (that is, 14 percent of her total damages) from Schrimpf. The plaintiff seeks in the current action to recover $250,000 from Schrimpf for the remaining 14 percent causal negligence attributable to Pratchet.

common scheme or plan has resulted in damages for purposes of tort liability to the plaintiff. In other words, the majority opinion has concluded that Wis. Stat. § 895.045(2) changes the Wisconsin law on causation.[7] Nothing in the text of Wis. Stat. § 895.045(2) states that the legislature is altering or modifying the substantial factor test of causation, as the majority opinions opine.

¶ 64. The end! No more need be said.

¶ 65. I write more, however, because in addition to ignoring the text of the statute, the majority opinion rests, as Judge Fine recognizes, on "concepts that are not on point." The majority opinion errs by listening to the siren song of concerted action. The majority opinion errs by applying the common law doctrine of "concerted action" in a context in which it does not apply. The concept of concerted action in the Restatement (Second) of Torts § 876 and in the cases (upon which the majority opinion relies) is not on point in interpreting and applying Wis. Stat. § 895.045.

¶ 66. Concerted action in the Restatement and in the cases is a substantive rule of tort liability to determine which of multiple actors are causally negligent and liable to an injured plaintiff. Concerted action under the Restatement and in these cases relates to a theory of liability.[8]

---

[7] *Compare* majority op., ¶ 11 (conceding that Schrimpf and Pratchet's negligent act of procuring alcohol for the underage driver resulted in 28 percent of damages to the plaintiff for purposes of liability to the plaintiff) *with* majority op., ¶ 54 (concluding that Schrimpf and Pratchet's procurement of alcohol for the underage driver did not result in damages to the plaintiff for purposes of § 895.045(2)).

[8] Section 876 of the Restatement (Second) of Torts (1979) is a specific application of the rule stated in § 875 of the Restatement, which provides as follows:

575

¶ 67. The majority opinion lifts the doctrine of concerted action and applies it in a different legal context, namely in the allocation of damages among those tortfeasors already found at fault. Wisconsin Stat. § 895.045(2) does not determine fault; it apportions damages after liability has been determined.

¶ 68. The majority opinion compounds its mistake of applying the substantive doctrine of concerted action by treating the doctrine as one departing from Wisconsin's law of causation. According to the majority

---

> Each of two or more persons whose tortious conduct is a legal cause of a single and indivisible harm to the injured party is subject to liability to the injured party for the entire harm.

Comment c explains that § 875 is consistent with the rules of causation in negligence; any one of a number of persons whose tortious conduct is a substantial factor in causing harm is liable for the harm in the absence of a superseding cause.

Section 876 of the Restatement provides in relevant part as follows:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . does a tortious act in concert with the other or pursuant to a common design with him . . . .

The Wisconsin cases upon which the majority relies similarly treat the common law doctrine of "concerted action" as a rule to determine causal negligence. *See Bruttig v. Olsen,* 154 Wis. 2d 270, 280, 453 N.W.2d 153 (Ct. App. 1989) (stating that concerted action is "a separate theory of liability"); *Collins v. Eli Lilly Co.,* 116 Wis. 2d 166, 185, 342 N.W.2d 37 (1984) ("The concerted action theory typically is applied to situations in which . . . a particular defendant is already identified as causing the plaintiff's harm, and the plaintiff desires to extend liability to those acting in league with that defendant.") (citation omitted); *Ogle v. Avina,* 33 Wis. 2d 125, 133–35, 146 N.W.2d 422 (1966) (participant in a drag race causally negligent even though plaintiff's injuries were caused most directly by another participant in the race).

opinion, joint and several liability under Wis. Stat. § 895.045(2) applies only to tortfeasors who act in accordance with a common scheme or plan that is *the* direct and particular cause of the plaintiff's damages, rather than merely *a* cause of the plaintiff's damages. The majority opinion requires that damages be *the* direct and particular result of the common scheme or plan for purposes of § 895.045, rather than merely *a* result of the common scheme or plan.[9]

¶ 69. The majority opinion declares that for purposes of joint and several liability under § 895.045(2) the common scheme to procure the alcohol beverage in the instant case did not result in the plaintiff's damages, notwithstanding the parties' stipulation that the procurement of alcohol was a cause of damages to the plaintiff and that the providers were liable for their causal negligence. The majority opinion concludes that for purposes of joint and several liability under § 895.045(2), the only cause of the plaintiff's damages was the underage drinker's consumption of alcohol to the point of intoxication and subsequent decision to drive while intoxicated.

¶ 70. The majority opinion's reasoning is explained in a simple way in the third-party brief of the Wisconsin Insurance Alliance and Property Casualty

---

[9] The test of cause in Wisconsin is whether the defendant's negligence was a substantial factor in producing the injury. It need not be the sole factor or the primary factor, only a 'substantial factor.' The phrase 'substantial factor' denotes that the defendant's conduct has such an effect in producing the harm as to lead the trier of fact, as a reasonable person, to regard it as a cause, using that word in the popular sense. There may be several substantial factors contributing to the same result. *Clark v. Leisure Vehicles, Inc.*, 96 Wis. 2d 607, 617–18, 292 N.W.2d 630 (1980) (internal citations omitted).

Insurers Association of America. The brief urges that the words "that action" in Wis. Stat. § 895.045(2) mean that joint and several liability is applicable only in those cases where the damages result *solely* from the tortfeasors who act in accordance with a common scheme or plan. Applying this interpretation to the present case, the Alliance's brief concludes that "[i]n this case, the concerted action, or 'that action,' was buying beer, but the harm resulted from drunk driving—conduct different from 'that action.' "[10]

¶ 71. I do not know on what basis the majority opinion determines that the common-law doctrine of concerted action (or Wis. Stat. § 895.045(2), which the majority opinion concludes is a codification of the common-law doctrine) applies only when damages result *solely* from acts that the tortfeasors undertake in accordance with a common scheme or plan. The majority opinion fails to cite any authority in support of its determination that for purposes of § 895.045(2), the plaintiff suffered no damages because of the defendants' common scheme or plan to procure alcohol.[11] Even assuming that the majority opinion is correct to apply the substantive doctrine of concerted action to the present case, it does not appear that this doctrine distinguishes between "a" cause and "the" cause in the manner that the majority opinion does. The majority opinion cites no case or treatise dealing with a situation similar to the present case, in which the defendants' common scheme or plan caused some but not all of the plaintiff's damages.

---

[10] Non-party Brief of Wisconsin Insurance Alliance & Property Casualty Insurance Association of America at 5.

[11] *See* majority op., ¶ 51.

¶ 72. In contrast to the majority opinion, I conclude that Wis. Stat. § 895.045 uses the concept of defendant tortfeasors acting in accordance with a common scheme or plan to allocate damages among the multiple tortfeasors already found to be at fault, not to determine (as § 876 of the Restatement does) whether each actor is liable to the plaintiff under a theory of liability. The multiple tortfeasors in the present case have been identified as contributing to a single injury and the responsibility of each is based upon the causal fault. In other words, tort liability has already been decided when § 895.045 is applied. I conclude that under § 895.045, Schrimpf is liable for damages attributed to Pratchet's causal negligence.

¶ 73. Several factors support the position I espouse.

¶ 74. First, the text of Wis. Stat. § 895.045 supports my view of "concerted action." Wisconsin Stat. § 895.045(1) modifies the common-law rule of joint and several liability. The common-law rule regarding joint and several liability allowed a plaintiff (who was not negligent) to recover the total judgment against any defendant who was liable—regardless of how much fault was attributable to that tortfeasor. Section 895.045(1) limits the plaintiff's recovery from a tortfeasor whose causal negligence is less than 51 percent to the percentage of the total causal negligence attributed to that person. Ordinarily, Wis. Stat. § 895.045(1) would preclude the plaintiff from recovering Pratchet's 14 percent share of liability from Schrimpf.

¶ 75. Wisconsin Stat. § 895.045(2), however, provides an exception to the statutory modification of joint and several liability. Subsection (2) provides that if 2 or more parties act in accordance with a common scheme

579

or plan, those parties are jointly and severally liable for all damages resulting from that action.

¶ 76. The phrase "concerted action" does not appear in the text of Wis. Stat. § 895.045. The phrase is in the title to § 895.045(2). The phrase "concerted action" in the title to § 895.045(2) is obviously a shorthand for the lengthier statutory language "act in accordance with a common scheme or plan."[12] The concept of concerted action can play a role in § 895.045. The substantive law of concerted action may be used to interpret whether the defendant tortfeasors acted in accordance with a common scheme or plan under § 895.045(2).[13]

¶ 77. Section 895.045(1) and (2) provide as follows:

> **(1) Comparative negligence.** Contributory negligence does not bar recovery in an action by any person or the person's legal representative to recover damages for negligence resulting in death or in injury to person or property, if that negligence was not greater than the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributed to the person recovering. The negligence of the plaintiff shall be measured separately against the negligence of each person found to be causally negligent. The liability of each person found to be causally negligent whose percentage of causal negligence is less than 51% is

---

[12] Several states apparently have adopted the concept of "concerted action" as an exception to the modification of joint and several liability. Richard W. Wright, *Allocating Liability Among Multiple Responsible Causes: A Principled Defense of Joint and Several Liability for Actual Harm and Risk Exposure,* 21 U. C. Davis L. Rev. 1141, 1168 (1987–88). *See, e.g.,* Idaho Code Ann. § 6–803 (2004); N.D. Cent. Code § 32–03.2–02 (2006).

[13] *See Hurt v. Freeland,* 589 N.W.2d 551, 557 (N.D. 1999).

limited to the percentage of the total causal negligence attributed to that person. A person found to be causally negligent whose percentage of causal negligence is 51% or more shall be jointly and severally liable for the damages allowed.

**(2) Concerted action.** Notwithstanding sub. (1), if 2 or more parties act in accordance with a common scheme or plan, those parties are jointly and severally liable for all damages resulting from that action, except as provided in s. 895.043(5).

¶ 78. As I see it, Wis. Stat. § 895.045 directs that each of the multiple actors who has acted in accordance with a common scheme or plan and whose causal negligence has been apportioned at less than 51 percent is liable to the plaintiff not only for his or her own share of causal negligence but also for the share of causal negligence of another defendant with whom he acted in concert. Rather than decide the substantive tort liability of multiple actors, § 895.045 *apportions* damages after the liability of the multiple tortfeasors has already been determined. Section 895.045 does not change causal negligence.

¶ 79. Second, the court of appeals in *Danks v. Stock Building Supply, Inc.*, 2007 WI App 8, ¶ 39, 298 Wis. 2d 348, 727 N.W.2d 846, is in accord with my interpretation, correctly describing Wis. Stat. § 895.045(2) as follows:

Wisconsin Stat. § 895.045(1) sets forth Wisconsin's law of comparative negligence, specifying when a negligent plaintiff may recover from a negligent defendant. It also spells out Wisconsin law regarding joint and several liability among defendants, specifying when a given defendant may become liable for all damages assessed against multiple tortfeasors. Thus § 895.045(2) applies only *after* a judge or jury has determined, under appli-

cable substantive law, that more than one tortfeasor is liable in some measure to the plaintiff. Subsection (2) simply modifies subsection (1) of the statute to provide that all defendants who are legally responsible for causing a plaintiff's damages, and who acted in concert in so doing, are jointly and severally liable for the plaintiff's damages, irrespective of whether a given defendant's apportioned causal negligence is less than 51%.

¶ 80. Third, other states have similarly interpreted "concerted action" in joint and several liability statutes. The North Dakota Supreme Court, for example, held that its joint and several liability statute with a special provision for "concerted action" "does not create an independent basis of liability, rather it deals with the allocation of damages among those already at fault."[14]

¶ 81. Fourth, my interpretation of Wis. Stat. § 895.045(2) comports with Restatement (Third) of the Law of Torts: Apportionment of Liability § 15 (2000),

---

[14] *Hurt v. Freeland,* 589 N.W.2d 551, 557 (N.D. 1999).

North Dakota has a statute similar to Wis. Stat. § 895.045(2). The North Dakota statute provides in part (and provided at the time of the *Hurt* decision):

> When two or more parties found to have contributed to the injury, the liability of each party is several only, and is not joint, and each party is liable only for the amount of damages attributable to the percentage of fault of that party, *except that any persons who act in concert* in committing a tortious act or aid or encourage the act, or ratifies or adopts the act for their benefit, are jointly liable for all damages attributable to their combined percentage of fault. Under this section, fault includes negligence, malpractice, absolute liability, dram shop liability, failure to warn, reckless or willful conduct, assumption of risk, misuse of product, failure to avoid injury, and product liability, including product liability involving negligence or strict liability or breach of warranty for product defect.

N.D. Cent. Code § 32–03.2–02 (2006) (emphasis added).

which does not replace Restatement (Second) § 876, but is an addition thereto. Section 15 provides for apportionment of liability when persons act in concert as follows:

> When persons are liable because they acted in concert, all persons are jointly and severally liable for the share of comparative responsibility assigned to each person engaged in concerted activity.

¶ 82. Comment *a* explains that § 15 applies when the "governing law determines that concerted activity took place and that the tortious acts of one or more of the participants in the concerted activity was a legal cause of the plaintiff's indivisible injury."[15] The comment further explains that "[t]he joint and several liability of those engaged in concerted activity is for the total comparative responsibility assigned to all who engage in the concerted activity."[16] The Reporters' Note to § 15 of the Restatement (Third) of Torts: Apportionment of Liability interprets Wis. Stat. § 895.045 as retaining "full joint and several liability for concerted actors."[17] According to the comment, the American Law Institute does not take a position on "whether a concerted-action tortfeasor is also jointly and severally liable for the share of comparative responsibility assigned to an independent tortfeasor who is also liable for the same indivisible injury."[18]

---

[15] Restatement (Third) of the Law of Torts: Apportionment of Liability § 15, cmt. a at 129 (2000).

[16] *Id.*

[17] Restatement (Third) of the Law of Torts: Apportionment of Liability § 15, reporters' note at 131 (2000).

[18] Restatement (Third) of the Law of Torts: Apportionment of Liability § 15 at 129 (2000).

¶ 83. Fifth, my interpretation of Wis. Stat. § 895.045(2) also comports with *Reilly v. Anderson,* 727 N.W.2d 102 (Iowa 2006), in which the Iowa Supreme Court had to decide whether the theory of concerted action is compatible with statutory comparative fault principles.[19] The Iowa court explained, 727 N.W.2d at 109, that where an independent party (such as the underage drunken driver in the present case) had been assigned 55 percent fault and concerted actors #1 and #2 (here Schrimpf and Pratchet) had been assigned fault of 35 percent and 10 percent respectively, the concerted actors would at least be jointly and severally liable for 45 percent of plaintiff's damages. The Iowa court did not decide whether the concerted actors would be jointly and severally liable for the entire fault assigned to all defendants in the fact situation described.

¶ 84. For the reasons set forth, I dissent.

¶ 85. I am authorized to state that Justices ANN WALSH BRADLEY and LOUIS B. BUTLER, JR. join this opinion.

---

[19] The Iowa statute provided that joint and several liability attaches only to those persons, excluding the plaintiff, who are found 50 percent or more at fault. The statute was silent about concerted action.