# 2021 WI APP 9

## COURT OF APPEALS
## COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:        2020AP520

†Petition for Review Filed

Complete Title of Case:

>
>
> **FRIENDLY VILLAGE NURSING AND REHAB, LLC AND FRIENDLY VILLAGE HEALTHCARE CENTER,**
>
>     **†PLAINTIFFS-APPELLANTS,**
>
>   **V.**
>
> **STATE OF WISCONSIN DEPARTMENT OF WORKFORCE DEVELOPMENT AND STATE OF WISCONSIN LABOR AND INDUSTRY REVIEW COMMISSION,**
>
>     **DEFENDANTS-RESPONDENTS,**
>
>   **V.**
>
> **RHINELANDER HEALTHCARE OPERATOR 150, LLC,**
>
>     **DEFENDANT.**

---

Opinion Filed:        December 15, 2020
Submitted on Briefs:   November 10, 2020
Oral Argument:

---

JUDGES:        Stark, P.J., Hruz and Seidl, JJ.
      Concurred:
      Dissented:

---

Appellant

ATTORNEYS:     On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Alon Stein* of *Stein Law Offices*, Milwaukee.

Respondent
ATTORNEYS:     On behalf of the defendant-respondent, the cause was submitted on the brief of *Ryan X. Farrell* of *Department of Workforce Development*.

2021 WI App 9

COURT OF APPEALS
DECISION
DATED AND FILED

December 15, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP520**

**STATE OF WISCONSIN**

Cir. Ct. No.  2019CV121

**IN COURT OF APPEALS**

---

FRIENDLY VILLAGE NURSING AND REHAB, LLC AND
FRIENDLY VILLAGE HEALTHCARE CENTER,

   PLAINTIFFS-APPELLANTS,

 V.

STATE OF WISCONSIN DEPARTMENT OF WORKFORCE DEVELOPMENT
AND STATE OF WISCONSIN LABOR AND INDUSTRY REVIEW COMMISSION,

   DEFENDANTS-RESPONDENTS,

 V.

RHINELANDER HEALTHCARE OPERATOR 150, LLC,

   DEFENDANT.

---

APPEAL from an order of the circuit court for Oneida County: MICHAEL H. BLOOM, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1    STARK, P.J. Friendly Village Nursing and Rehab, LLC, and Friendly Village Healthcare Center (collectively, "Friendly Village") appeal an order affirming a decision of the Labor and Industry Review Commission ("the Commission"). After purchasing a nursing home in Rhinelander, Friendly Village filed an application with the Department of Workforce Development ("the Department") to succeed to the seller's unemployment account experience. The Department denied the application because it was not timely filed. The Commission later determined that Friendly Village's failure to timely file the application was not the result of excusable neglect, and the circuit court affirmed that determination.

¶2    On appeal, Friendly Village argues the Commission erred by failing to consider the interests of justice in its excusable neglect analysis. We disagree. The relevant statute—WIS. STAT. § 108.16(8)(b)4. (2017-18)[1]—requires a transferee to satisfy the Department that its application was late as a result of excusable neglect. Nothing in the plain language of the statute requires the Department—or, on review, the Commission—to consider the interests of justice when analyzing excusable neglect. Although Friendly Village argues *Casper v. American International South Insurance Co.*, 2011 WI 81, 336 Wis. 2d 267, 800 N.W.2d 880, requires a decision maker to consider the interests of justice in its excusable neglect analysis, *Casper* is inapplicable here because it did not address excusable neglect under § 108.16(8)(b)4.

¶3    Accordingly, we reject Friendly Village's argument that the Commission erred by failing to consider the interests of justice. We further

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

conclude that, on the record before it, the Commission properly determined Friendly Village had failed to establish excusable neglect. We therefore affirm.

## BACKGROUND

¶4      The following facts are undisputed. Eden Senior Care ("Eden") is an Illinois company that purchases and rehabilitates distressed nursing homes. Prior to 2017, Eden had purchased and operated nursing homes solely in Minnesota. However, on September 1, 2017, Eden purchased its first two nursing homes in Wisconsin: Friendly Village in Rhinelander, and Northpoint Nursing and Rehab in Oshkosh.

¶5      At the time of those purchases, Eden had recently hired as a senior business analyst a twenty-two-year-old college graduate with degrees in communications and biology, who was also a family member of Eden's corporate manager. Eden directed the analyst to complete online employer registration reports in order to register Friendly Village and Northpoint with the Department. The employer registration report contains the question: "Did you acquire this activity from a previous employer?" The analyst incorrectly answered that question "No" on the employer registration reports for both Friendly Village and Northpoint.

¶6      Whether Eden acquired Friendly Village and Northpoint from a previous employer matters because, pursuant to WIS. STAT. § 108.16(8)(b), "[i]f the business of any employer is transferred, the transferee is deemed a successor for purposes of" WIS. STAT. ch. 108, provided certain statutory conditions are met. A successor succeeds to the transferor's unemployment account experience. *See* WIS. STAT. §§ 108.02(14), 108.16(8)(f). On appeal, the Department explains that unemployment account experience includes: (1) the transferor's positive or negative unemployment insurance reserve fund balance; (2) unemployment benefit

3

liability based on the transferor's employment; (3) the transferor's reported payrolls for the purposes of meeting the taxable wage base in the transfer year; and (4) all other aspects of the transferor's account. The Department further explains that an employer with negative account experience will generally pay unemployment contributions at a higher rate, while an employer with positive account experience will generally pay contributions at a lower rate. *See* WIS. STAT. § 108.01(1).

¶7      In order to qualify as a successor under WIS. STAT. § 108.16(8)(b), a transferee must, among other things, submit a written application to the Department "requesting that it be deemed a successor." Sec. 108.16(8)(b)4. The Department must receive the application "on or before the contribution payment due date for the first full quarter following the date of transfer," unless the transferee "satisfies the department that the application was late as a result of excusable neglect." *Id.* In any event, the Department "shall not accept a late application … more than 90 days after its due date." *Id.*

¶8      If Eden's business analyst had correctly indicated on Friendly Village's and Northpoint's employer registration reports that Eden had acquired those activities from previous employers, the Department would have directed Eden to complete report of business transfer ("ROBT") forms for Friendly Village and Northpoint. A transferee applies to succeed to the unemployment account experience of its predecessor by checking a box on the ROBT form labeled "This is my application to acquire the account experience of the former owner." The deadline for Eden to complete the ROBT forms and thereby apply to succeed to its predecessors' unemployment account experience was January 31, 2018. Eden failed to meet that deadline.

¶9    In late February 2018, Eden's human resources director learned that it is possible in Wisconsin for a transferee to acquire the unemployment account experience of its predecessor. Eden then immediately contacted the Department and asked whether it could acquire its predecessor's account experience for the Northpoint facility. There is no evidence in the record that Eden also inquired, at that point, about succeeding to its predecessor's account experience for Friendly Village. On March 6, 2018, the Department determined that Eden's late filing of the ROBT for Northpoint was the result of excusable neglect. Eden was therefore allowed to succeed to the transferor's unemployment account experience for Northpoint.

¶10    Several days later, Eden contacted the Department and asked if it could also succeed to the transferor's unemployment account experience for Friendly Village. Eden submitted an ROBT for Friendly Village on March 13, 2018. Friendly Village's ROBT was not handled by the same Department employee who had handled Northpoint's late filing. The employee who processed Friendly Village's ROBT determined the delay in filing that report was not the result of excusable neglect and, as a result, the Department would not accept the late filing.

¶11    Friendly Village appealed the Department's determination that its late filing was not the result of excusable neglect. Following an evidentiary hearing, an administrative law judge (ALJ) reversed the Department's decision. The ALJ concluded the business analyst's neglect in incorrectly answering the relevant question on Friendly Village's employer registration report was excusable, and Friendly Village had acted promptly to cure the problem. Because the Department had conceded that Friendly Village met all of the other statutory requirements to qualify as a successor, the ALJ determined Friendly Village "is the successor to the

Wisconsin unemployment reserve account of [the facility's previous owner] within the meaning of section 108.16 of the Wisconsin Statutes."

¶12    The Department sought Commission review of the ALJ's decision, and the Commission reversed.  The Commission explained that excusable neglect "is the neglect which might have been the act of a reasonably prudent person under the same circumstances" and is "not synon[y]mous with neglect, carelessness, or inattentiveness."

¶13    The Commission then determined that Friendly Village had failed to meet its burden of proving excusable neglect.  It noted that the business analyst who incorrectly answered the relevant question on Friendly Village's employer registration report did not testify at the administrative hearing.  The Commission therefore stated there was "no competent evidence establishing the nature of [the analyst's] error, such that a finder of fact could conclude that the error was excusable."  The Commission further stated the question that the analyst answered incorrectly was "straightforward and requires no expertise, business, legal, or otherwise, to answer correctly."  The Commission also reasoned that "purchasing distressed entities and getting them back 'on their feet' is part of [Eden's] business model," which was "something the analyst … had to know, which makes his failure less excusable than it otherwise might be."

¶14    The Commission acknowledged that the Department had determined Northpoint's late successorship application was the result of excusable neglect.  The Commission stated, however, that it was "unclear" whether the circumstances in the two cases were the same.  The Commission also asserted that the Department's decision regarding Northpoint was an "informal decision … based upon the

circumstances of that case alone, and it is not binding even upon the department in other cases, much less upon the commission."

¶15 The Commission also acknowledged Friendly Village's argument that it had "promptly remedied its failure" to apply for successorship status. Nevertheless, the Commission stated that prompt correction of an error does not "eliminate the requirement that a dilatory party demonstrate excusable neglect for its initial failure to meet the statutory deadline."

¶16 Finally, the Commission noted that it had not conferred with the ALJ before reversing his decision. However, the Commission stated its reversal was "not based upon a differing credibility assessment from any made by the [ALJ]. Rather, the commission has concluded that, as a matter of law, Friendly Village has not established that its late application was due to excusable neglect." The Commission did not address Friendly Village's argument—raised in its letter brief to the Commission—that a determination of excusable neglect "goes beyond consideration of the causes of neglect, to include consideration of other factors in the interests of justice."

¶17 Friendly Village then sought judicial review of the Commission's decision. In the circuit court proceedings, Friendly Village argued the Commission had erred by failing to consider the interests of justice in its excusable neglect analysis. The court rejected that argument, concluding the Commission's excusable neglect analysis under WIS. STAT. § 108.16(8)(b)4. was "not dependent on applying the interest-of-justice factors" that Friendly Village had raised. The court affirmed the Commission's decision, and Friendly Village now appeals.

**DISCUSSION**

¶18 On appeal, we review the Commission's decision, rather than the decision of the circuit court. ***Operton v. LIRC***, 2017 WI 46, ¶18, 375 Wis. 2d 1, 894 N.W.2d 426. The scope of our review of the Commission's decision is limited by statute. *See* WIS. STAT. § 108.09(7)(c)6. We may set aside the Commission's decision only if: (1) the Commission acted without or in excess of its powers; (2) the Commission's order was procured by fraud; or (3) the Commission's findings of fact do not support its order. ***Id.***

¶19 We will uphold the Commission's findings of fact as long as they are supported by credible and substantial evidence. ***Operton***, 375 Wis. 2d 1, ¶18. "However, our supreme court recently ended the practice of deferring to an administrative agency's conclusions of law." ***Mueller v. LIRC***, 2019 WI App 50, ¶17, 388 Wis. 2d 602, 933 N.W.2d 645 (citing ***Tetra Tech EC, Inc. v. DOR***, 2018 WI 75, ¶¶3, 84, 382 Wis. 2d 496, 914 N.W.2d 21). We therefore review the Commission's legal conclusions de novo. ***Id.*** The interpretation of a statute is a legal conclusion. *See* ***Tetra Tech***, 382 Wis. 2d 496, ¶12. An agency acts outside its power when it incorrectly interprets a statute. *See* ***DWD v. LIRC***, 2018 WI 77, ¶12, 382 Wis. 2d 611, 914 N.W.2d 625.

¶20 Here, Friendly Village argues the Commission acted in excess of its powers by failing to consider the interests of justice when analyzing whether Friendly Village's late filing of its successorship application was due to excusable

neglect.[2]  Friendly Village argues our supreme court's decision in *Casper* requires a decision maker to consider the interests of justice in its excusable neglect analysis. Friendly Village therefore argues the Commission should have considered various "interest of justice" factors when analyzing the issue of excusable neglect, including whether:

> (1) the party seeking an enlargement of time has acted in good faith; (2) the opposing party has been prejudiced by the delay; (3) the party promptly sought to remedy the situation caused by the failure to file timely; (4) the failure to file timely was the result of a conscientious, deliberate, and well-informed choice; (5) the party seeking enlargement received the effective assistance of counsel; (6) … there was a consideration of the merits; [and] (7) … the claim has merit, but for the failure to timely file.

¶21    Friendly Village's argument is fatally flawed because it ignores the plain language of WIS. STAT. § 108.16(8)(b)4.  *See State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶¶45-46, 271 Wis. 2d 633, 681 N.W.2d 110 (explaining that statutory interpretation begins with the statute's plain language, and if that plain language is unambiguous, we apply it as written). Section 108.16(8)(b)4. plainly states that a transferee's successorship application "must be received by the department on or before the contribution payment due date for the first full quarter following the date of transfer," unless the transferee "satisfies the department that the application was late as a result of excusable

---

[2] Friendly Village actually frames the issue on appeal as whether the circuit court "was correct in ruling that the interests-of-justice factors do not need to be considered when determining whether there has been excusable neglect."  As noted above, however, we review the Commission's decision, not that of the circuit court.  *See Operton v. LIRC*, 2017 WI 46, ¶18, 375 Wis. 2d 1, 894 N.W.2d 426.

In addition, we observe that the only disputed issue on appeal is whether the Commission properly determined that Friendly Village's late filing of its successorship application was the result of excusable neglect.  It is undisputed that Friendly Village satisfied the other successorship requirements set forth in WIS. STAT. § 108.16(8)(b)1.-3.  It is also undisputed that Friendly Village's successorship application was not timely filed.

neglect." Nothing in the plain language of the statute requires—or even permits—the Department to consider the interests of justice when determining whether to accept a late successorship application.

¶22 As creatures of the legislature, the Department and the Commission have only those powers that are expressly conferred by or necessarily implied from the statutes under which they operate. *See LaBeree v. LIRC*, 2010 WI App 148, ¶17, 330 Wis. 2d 101, 793 N.W.2d 77. WISCONSIN STAT. § 108.16(8)(b)4. does not expressly direct the Department—or, by extension, the Commission—to consider the interests of justice in its excusable neglect analysis. Nor does the statute's plain language necessarily imply that the interests of justice should be considered when determining whether a transferee has established excusable neglect. The Department and the Commission have no equitable authority to consider factors outside the statutory text. *See Borello v. Industrial Comm'n*, 26 Wis. 2d 62, 66, 131 N.W.2d 847 (1965) (stating that in a worker's compensation proceeding, which is a "statutory action," "the rights, remedies and procedures are established by statute" and "[t]he relief sought must be within the statute").

¶23 Additionally, we interpret statutory language in context, "in relation to the language of surrounding or closely-related statutes." *Kalal*, 271 Wis. 2d 633, ¶46. In another section of WIS. STAT. ch. 108, the legislature expressly directed the Department to consider the interests of justice. Specifically, WIS. STAT. § 108.068(6) provides: "The department may, in the interests of justice or to prevent fraud upon the unemployment insurance program, determine that a member of a limited liability company is an employee of that company." The fact that the legislature expressly directed the Department to consider the interests of justice in § 108.068(6), but did not similarly do so in WIS. STAT. § 108.16(8)(b)4., supports

our conclusion that the legislature did not intend the Department to consider the interests of justice when analyzing excusable neglect under the latter statute.

¶24     The statutory history of WIS. STAT. § 108.16(8)(b)4. further supports this conclusion.[3]  Section 108.16(8)(b)4. was amended in 2013.  *See* 2013 Wis. Act 36, § 99.  The prior version of the statute provided that a transferee was deemed a successor for purposes of WIS. STAT. ch. 108 when, among other things, "[t]he department has received a written application from the transferee requesting that it be deemed a successor.  *Such application must be received by the department on or before the contribution payment due date for the first full quarter following the date of transfer.*"  WIS. STAT. § 108.16(8)(b)4. (2011-12) (emphasis added).  Thus, before 2013, the Department had no ability to accept a late successorship application.  The legislature amended the statute in 2013 to allow the Department to accept late applications under the limited circumstances where:  (1) the transferee satisfies the Department that the application was late as a result of excusable neglect; and (2) the application was not submitted more than ninety days after its due date.  Sec. 108.16(8)(b)4.; 2013 Wis. Act 36, § 99.

¶25     The clear intent of the 2013 amendment to WIS. STAT. § 108.16(8)(b)4. was to grant the Department some latitude in accepting late successorship applications.  Nonetheless, the legislature limited the Department's ability to do so to the circumstances specified in the statute.  The legislature could have chosen to allow the Department to accept late successorship applications in a broader variety of circumstances, but it did not do so.  Under these circumstances,

_____

[3] We may consider statutory history—that is, "the previously enacted and repealed provisions of a statute"—as part of our plain meaning statutory analysis.  *See* **Richards v. Badger Mut. Ins. Co.**, 2008 WI 52, ¶22, 309 Wis. 2d 541, 749 N.W.2d 581.

11

we decline to go beyond the statutory text and interpret § 108.16(8)(b)4. as requiring the Department to consider the interests of justice when determining whether a transferee has established excusable neglect.

¶26     Friendly Village's argument that the Department and the Commission were required to consider the interests of justice is not based on the text of WIS. STAT. § 108.16(8)(b)4. Instead, Friendly Village argues our supreme court imposed that requirement in *Casper*. However, *Casper* is materially distinguishable.

¶27     In *Casper*, the plaintiffs filed suit against multiple parties, one of which was National Union Fire Insurance Company. *Casper*, 336 Wis. 2d 267, ¶21. After receiving the plaintiffs' complaint in New Jersey, a National Union employee mailed the complaint to a claims specialist in Atlanta. *Id.* The complaint was lost in the mail, and, as a result, the claims specialist never received it and thus failed to timely file an answer. *Id.* The plaintiffs then moved for a default judgment against National Union. *Id.*, ¶22. Several days later, National Union filed its answer and sought an enlargement of the time to do so under WIS. STAT. § 801.15(2)(a). *Casper*, 336 Wis. 2d 267, ¶22. The circuit court granted National Union's motion, concluding the complaint's being "lost in the mail" satisfied the statutory requirement for excusable neglect. *Id.*

¶28     On appeal, our supreme court stated that in order to grant a motion to enlarge time under WIS. STAT. § 801.15(2)(a), "[a] circuit court must determine whether reasonable grounds exist for failing to meet the statutory time period." *Casper*, 336 Wis. 2d 267, ¶37. However, the court further stated: "A determination of excusable neglect does not rest solely on the existence of reasonable grounds for the party's delay. *A court also must consider the interests of justice implicated by*

*the grant or denial of the motion, and what effects such a ruling would have on the proceedings.*" ***Id.***, ¶38 (citations omitted; emphasis added).

¶29   Friendly Village asserts ***Casper*** stands for the proposition that a decision maker must always consider the interests of justice when analyzing whether a late filing was the result of excusable neglect. ***Casper*** did not, however, address excusable neglect under WIS. STAT. § 108.16(8)(b)4.—the statute at issue in this case. Section 108.16(8)(b)4. pertains to the specific circumstances in which the Department may accept a late successorship application. In contrast, ***Casper*** addressed excusable neglect under WIS. STAT. § 801.15(2)(a), a civil procedure statute. ***Casper***'s directive was litigation-focused and required circuit courts to consider how allowing a late filing might impact the proceedings. Friendly Village cites no authority in support of the proposition that ***Casper***'s holding applies to the Department's determination of excusable neglect under § 108.16(8)(b)4.

¶30   Moreover, WIS. STAT. § 801.15(2)(a)—the statute at issue in ***Casper***—provides: "When an act is required to be done at or within a specified time, the court may order the period enlarged but only on motion for cause shown *and upon just terms*." (Emphasis added.) Thus, ***Casper*** addressed a statute that contained language directing courts to consider the interests of justice when addressing a motion to enlarge time. As discussed above, WIS. STAT. § 108.16(8)(b)4. contains no such language.

¶31   In addition, the ***Casper*** court observed that the denial of a motion to enlarge time under WIS. STAT. § 801.15(2)(a) "often results in a default judgment for the plaintiffs, a result disfavored by the law." ***Casper***, 336 Wis. 2d 267, ¶38. In the context of a default judgment, parties are denied the ability to have their claims or defenses in civil lawsuits heard on the merits. Unlike ***Casper***, this case does not

involve the prospect of a default judgment but, rather, the transactional ability of a business to receive certain treatment for purposes of unemployment insurance. As such, the procedural context of this case is quite different from that which motivated our supreme court to require a consideration of the interests of justice in *Casper*.

¶32     For these reasons, *Casper*'s holding that a court "must consider the interests of justice implicated by the grant or denial of" a motion to enlarge time under WIS. STAT. § 801.15(2)(a) is inapplicable in this case, which involves a determination of excusable neglect by an administrative agency under WIS. STAT. § 108.16(8)(b)4. Friendly Village also relies on *Hedtcke v. Sentry Insurance Co.*, 109 Wis. 2d 461, 326 N.W.2d 727 (1982), and *Rutan v. Miller*, 213 Wis. 2d 94, 570 N.W.2d 54 (Ct. App. 1997), in support of its argument that the Commission was required to consider the interests of justice when analyzing excusable neglect. However, those cases are distinguishable for the same reasons as *Casper*—namely, they involved motions to enlarge time under § 801.15(2)(a) and the associated potential for default judgments, and they did not address excusable neglect under § 108.16(8)(b)4. *See Hedtcke*, 109 Wis. 2d at 467-68; *Rutan*, 213 Wis. 2d at 101.

¶33     We therefore reject, as a matter of law, Friendly Village's argument that the Commission was required to consider the interests of justice when determining whether Friendly Village's late successorship application was the result of excusable neglect under WIS. STAT. § 108.16(8)(b)4. We further conclude, based on the evidence introduced during the administrative proceedings, that the Commission properly determined Friendly Village had failed to establish excusable neglect.

¶34     Under Wisconsin law, "excusable neglect" means that neglect "which might have been the act of a reasonably prudent person under the same

14

circumstances." *See **Dugenske v. Dugenske***, 80 Wis. 2d 64, 68, 257 N.W.2d 865 (1977) (citation omitted). It is not "synonymous with neglect, carelessness or inattentiveness." ***Giese v. Giese***, 43 Wis. 2d 456, 461, 168 N.W.2d 832 (1969). Our supreme court "has often held that neglect due to the pressure of a lawyer's work, without some 'additional persuasive explanation,' is not 'excusable neglect.'" ***Dugenske***, 80 Wis. 2d at 69 (citation omitted). In ***Dugenske***, the supreme court affirmed the circuit court's conclusion that a defense lawyer's misplacement of a complaint while in the process of relocating his office was not a persuasive explanation for the defendant's late answer and therefore did not establish excusable neglect. ***Id.*** at 66, 69.

¶35     Applying these legal standards, the Commission correctly determined that Friendly Village had failed to meet its burden to establish excusable neglect. Evidence at the administrative hearing showed that when completing Friendly Village's employer registration report, Eden's business analyst incorrectly answered "No" to the question "Did you acquire this activity from a previous employer?" The evidence further showed that, if the analyst had answered that question correctly, the Department would have directed Eden to complete an ROBT form for Friendly Village, which would have constituted a successorship application. Evidence also established that Eden was in the business of purchasing and rehabilitating distressed nursing homes and had, in fact, purchased Friendly Village from another entity. Under these circumstances, a reasonably prudent employee in the business analyst's position would have answered "Yes" when asked whether Eden had "acquire[d] this activity from a previous employer." If unsure about the answer to that question, a reasonably prudent employee would have made further inquiries in order to determine the correct answer before submitting Friendly Village's employer registration report to the Department.

¶36 While it is possible that Eden's business analyst mistakenly responded "No" to the relevant question on the employer registration report, even though he intended to respond "Yes," a reasonably prudent employee would have double-checked his or her responses before submitting the employer registration report to the Department. More importantly, however, Eden's business analyst did not testify at the administrative hearing. The Commission therefore lacked the benefit of his testimony regarding the reason for his incorrect answer. Without that testimony, the Commission concluded there was "no competent evidence establishing the nature of [the analyst's] error, such that a finder of fact could conclude that the error was excusable." In other words, there was no competent evidence from which the Commission could conclude that the analyst's incorrect answer "might have been the act of a reasonably prudent person under the same circumstances." *See Dugenske*, 80 Wis. 2d at 68.

¶37 Instead of calling the business analyst to testify at the administrative hearing, Friendly Village presented the testimony of its corporate manager, who stated, "[M]aybe because of the way the registration was filled out by [the business analyst] initially, there might have been misunderstanding or mistake on one of the questions." The corporate manager's testimony that the business analyst "might" have answered the relevant question incorrectly due to a "misunderstanding" or "mistake" was purely speculative. The Commission therefore reasonably declined to rely on his testimony.

¶38 Moreover, the evidence at the administrative hearing showed that Eden delegated the task of completing Friendly Village's employer registration report to a twenty-two-year-old recent college graduate with degrees in communications and biology. The Commission could reasonably conclude that a reasonably prudent business would not have assigned such a task to a new,

16

inexperienced employee without supervising his work or double-checking the accuracy of his answers.

¶39     On this record, the Commission properly determined that Friendly Village had failed to meet its burden to show that the late filing of its successorship application was the result of excusable neglect.    As discussed above, the Commission was not required to consider the interests of justice in its excusable neglect analysis.    We therefore affirm the circuit court's order affirming the Commission's decision.

*By the Court.*—Order affirmed.